# 14-4083

## United States Court Of Appeals

### IN AND FOR THE SECOND CIRCUIT

---

CINDY S. BROWN,
PERSONAL REPRESENTATIVE TO THE ESTATE OF WALTER E. BROWN

PLAINTIFF-APPELLANT,

v.

LOCKHEED MARTIN CORPORATION,
INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO MARTIN-MARIETTA CORP.,

DEFENDANT-APPELLEE.

(Caption Continued Inside Cover)

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

**DEFENDANT-APPELLEE
LOCKHEED MARTIN CORPORATION'S BRIEF**

---

GLAZIER YEE LLP
GUY P. GLAZIER
BRIAN T. CLARK
707 WILSHIRE BLVD., SUITE 2025
LOS ANGELES, CA 90017
TELEPHONE: (213) 312-9200

CETRULO LLP
MATTHEW J. ZAMALOFF
2 SEAPORT LANE
BOSTON, MA 02210
TELEPHONE: (617) 217-5266

ATTORNEYS FOR DEFENDANT-APPELLEE
LOCKHEED MARTIN CORPORATION

WALTER E. BROWN,

    PLAINTIFF,

V.

CBS CORPORATION, A DELAWARE CORPORATION, FKA VIACOM INC., SUCCESSOR, CBS CORPORATION, FKA WESTINGHOUSE ELECTRIC CORP., DAP, INC., GEORGIA PACIFIC LLC, HONEYWELL, INC., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO MINNEAPOLIS-HONEYWELL REGULATOR CO. AND ALLIED SIGNAL, INC. AS SUCCESSOR IN INTEREST TO ALLIED CORPORATION AND THE BENDIX CORPORATION AND FRAM, IMO INDUS., INC., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO ADEL FASTENERS, AND SUCCESSOR IN INTEREST TO WIGGINS CONNECTORS, ROLLS-ROYCE NORTH AMERICA, INC., ALLISON ENGINE COMPANY, INC., SUCCESSOR, ALLISON GAS TURBINE DIVISION, GENERAL ELECTRIC COMPANY, GOODRICH CORPORATION, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST SIMMONS PRECISION ENGINE SYSTEMS, METROPOLITAN LIFE INSURANCE COMPANY, SIMMONDS PRECISION PRODUCTS, INC., INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO GENERAL LABORATORY ASSOCIATES, INC., FKA SIMMONDS PRECISION ENGINE SYSTEMS, INC., DBA GOODRICH AEROSPACE AND GOODRICH FUEL UTILITIES SYSTEMS, BOEING COMPANY, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO MCDONNELL DOUGLAS, SUCCESSOR, DOUGLAS AIRCRAFT, UNION CARBIDE CORP., INDIVIDUALLY AND AS SUCCESSOR TO AMCHEM AND BENJAMIN FOSTER,

    DEFENDANTS-CROSS-CLAIMANTS-CROSS-DEFENDANTS,

UNITED TECHNOLOGIES CORPORATION, INDIVIDUALLY AND AS SUCCESSOR TO PRATT AND WHITNEY, CURTISS WRIGHT CORPORATION,

    DEFENDANTS-CROSS-DEFENDANTS.

## CORPORATE DISCLOSURE STATEMENT

Lockheed Martin Corporation has no parent corporation. State Street Bank and Trust Company owns 15.3% of Lockheed Martin Corporation's stock. No other publicly held corporation owns more than ten percent of Lockheed Martin Corporation's stock.

Dated: April 30, 2015                    GLAZIER YEE LLP

By: */s/ Guy P. Glazier*
       Guy P. Glazier

Attorneys for Appellee
Lockheed Martin Corporation

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

COUNTERSTATEMENT OF ISSUES PRESENTED ...........................................2

COUNTERSTATEMENT OF THE CASE ...............................................................3

    I.     NONRESIDENT LOCKHEED MARTIN'S LIMITED
           CONNECTICUT CONTACTS ...............................................................3

    II.    NONRESIDENT DECEDENT WALTER BROWN'S FIRST
           LAWSUIT AGAINST LOCKHEED MARTIN – FILED IN
           ALABAMA ...............................................................................................5

    III.   NONRESIDENT DECEDENT'S SECOND LAWSUIT
           AGAINST LOCKHEED MARTIN – FILED IN
           CONNECTICUT .......................................................................................6

    IV.   THE CONNECTICUT FEDERAL DISTRICT COURT'S
           DISMISSAL OF LOCKHEED MARTIN FOR LACK OF
           PERSONAL JURISDICTION .................................................................7

STANDARD OF REVIEW ......................................................................................9

ARGUMENT ......................................................................................................... 10

    I.     THE DISTRICT COURT CORRECTLY RULED THAT
           LOCKHEED MARTIN'S COMPLIANCE WITH
           CONNECTICUT'S BUSINESS REGISTRATION STATUTE
           DOES NOT CONSTITUTE CONSENT TO THE
           ASSERTION OF GENERAL PERSONAL JURISDICTION IN
           CONNECTICUT ..................................................................................... 10

          A.    Lockheed Martin's Designation Of A Connecticut Agent
                 For Service Of Process Does Not Constitute Consent To
                 All-Purpose, General Personal Jurisdiction ............................. 11

          B.    Plaintiff's Non-Connecticut Authority Is Distinguishable
                 And Inapplicable ....................................................................... 21

i

II.     THE DISTRICT COURT CORRECTLY RULED THAT
        LOCKHEED MARTIN IS NOT "AT HOME" IN
        CONNECTICUT .................................................................................. 24

        A.      The *Daimler* Decision ............................................................. 24

        B.      Lockheed Martin's Connecticut Contacts Do Not Render
                It "At Home" In Connecticut ................................................... 28

        C.      Plaintiff's Attempt To Distinguish *Daimler* Is Unavailing ..... 31

        D.      The *Asahi* "Reasonableness" Factors Are Not Applicable
                To A General Jurisdiction Analysis ......................................... 34

CONCLUSION ...................................................................................................... 35

CERTIFICATE OF COMPLIANCE ...................................................................... 36

# TABLE OF AUTHORITIES

## CASES

*Acorda Therapeutics, Inc. v. Mylan Pharms., Inc.*, No. 14-935-LPS, 2015
    WL 186833 (D. Del. Jan. 14, 2015) .................................................................. 22

*Arrowsmith v. United Press Int'l.*, 320 F.2d 219 (2d Cir. 1963) .......................... 10

*Asahi Metal Indus. Co., Ltd. v. Sup. Ct.*, 480 U.S. 102 (1987)............................... 34

*AstraZeneca v. Mylan Pharms., Inc.*, No. 14-696-GMS, 2014 WL 5778016
    (D. Del. Nov. 5, 2014) ....................................................................................... 22

*Bane v. Netlink, Inc.*, 925 F.2d 637 (3d Cir. 1991)................................................ 21

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779
    (2d Cir. 1999)...................................................................................................... 10

*Brown v. CBS Corp.*, 19 F. Supp. 3d 390 (D. Conn. 2014) ..................................... 7

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) ............. 10

*Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286 (11th Cir. 2000) ................... 23

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) ............................................... passim

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846
    (2011)................................................................................................................... 25

*Gucci Am., Inc. v. Li*, 768 F.3d 122 (2d. Cir. 2014) .............................................. 35

*Holloway v. Wright & Morrissey, Inc.*, 739 F.2d 695 (1st Cir. 1984)................... 21

*Hylton v. Gunter*, 97 A.3d 970 (Conn. 2014) ........................................................ 18

*J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011) ................................ 28

*Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181 (2d Cir. 1998) ............................... 9

*King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570 (9th Cir. 2011) .......................... 23

iii

*Knipple v. Viking Commc'ns, Ltd.*, 674 A.2d 426 (Conn. 1996) ...................... 12, 19

*Knowlton v. Allied Van Lines, Inc.,* 900 F.2d 1196 (8th Cir. 1990) ...................... 21

*Lake Road Trust, Ltd. v. ABB, Inc.*, No. HHDX04CV106016502S,
    2011 WL 1734458 (Conn. Super. Ct. April 11, 2011) ................................. 18, 19

*Lombard Bros., Inc. v. Gen. Asset Mgmt. Co.*, 460 A.2d 481 (Conn. 1983).... 11, 19

*McDonald v. Rowe*, 682 A.2d 542 (Conn. App. Ct. 1996).................................... 18

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinele*,
    567 F.3d 8 (1st Cir. 2009)................................................................... 23

*Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437 (1952) ......................... 26, 27

*Pittock v. Otis Elevator Co.*, 8 F.3d 325 (6th Cir. 1993) ....................... 23

*Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745 (4th Cir. 1971).................................... 23

*Seetransport Wiking Trader v. Navimpex Centrala Navala*, 989 F.2d 572
    (2d Cir. 1993)............................................................................................... 10

*Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179 (5th Cir. 1992) ...................... 23

*Talenti v. Morgan & Bro. Manhattan Storage Co., Inc.*, 968 A.2d 933
    (Conn. App. Ct. 2009) ........................................................... 16, 17, 18

*Thomason v. Chem. Bank*, 661 A.2d 595 (Conn. 1995) ......................... 11

*Troma Entm't, Inc. v. Centennial Pictures, Inc.*, 729 F.3d 215 (2d Cir. 2013)........ 9

*Wallenta v. Avis Rent A Car System, Inc*., 522 A.2d 820
    (Conn. App. Ct. 1987) ................................................................ passim

*Wilson v. Humphreys (Cayman) Ltd*., 916 F.2d 1239 (7th Cir. 1990)................... 23

*WorldCare Ltd., Corp. v. World Ins. Co.*, 767 F. Supp. 2d 341
(D. Conn. 2011) ......................................................................... 18, 19, 20

iv

*Yates v. United Car Rentals, Inc.,* No. CV075010375S, 2008 WL 2169436
  (Conn. Super. Ct. May 8, 2008). ........................................................... 18


## STATUTES

Conn. Gen. Stat. § 33-411 ........................................................... 14, 15, 16

Conn. Gen. Stat. § 33-602 ........................................................... 13

Conn. Gen. Stat. § 33-929 ........................................................... passim

## INTRODUCTION AND SUMMARY OF ARGUMENT

Lockheed Martin Corporation ("Lockheed Martin") is a Maryland corporation headquartered in Bethesda, Maryland. In this lawsuit filed by an Alabama resident – apparently filed in Connecticut because it would be untimely if maintained in Alabama – Plaintiff Cindy Brown seeks to invoke Connecticut's jurisdiction over Lockheed Martin to redress injuries that she alleges occurred in Alabama, Illinois, Delaware, France, and Germany. The United States Federal District Court for the District of Connecticut ("the District Court") correctly ruled that the assertion of Connecticut jurisdiction over Lockheed Martin would violate constitutional due process.

**First**, the District Court properly ruled that, by designating a Connecticut agent for service of process, as mandated by Connecticut law, Lockheed Martin did not waive its constitutional due process rights or consent to suit in Connecticut on claims having no connection whatsoever to Lockheed Martin's Connecticut activity. The Connecticut Supreme Court consistently holds that personal jurisdiction can be asserted over a nonresident defendant only if consistent both with Connecticut's long-arm statute and the Federal Due Process Clause. No Connecticut authority, whether from the Connecticut Supreme Court or otherwise, has permitted the assertion of Connecticut jurisdiction over a foreign corporation

1

that is neither headquartered in Connecticut nor sued for any Connecticut-related activity.

**Second**, the District Court correctly concluded that Lockheed Martin is not "at home" in Connecticut. Lockheed Martin derives a tiny fraction of its revenue (between 0.05% and 0.107%) from United States Government service contracts performed by an even tinier fraction (less than 0.05%) of its employees, who are located in Connecticut because the United States Government requires them to be there. Lockheed Martin solicits no business from Connecticut residents and owns no Connecticut property. After giving Plaintiff the benefit of every reasonable factual inference and applying the general jurisdiction standards recently clarified by the United States Supreme Court in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), the District Court correctly concluded that Connecticut's assertion of personal jurisdiction over Lockheed Martin would violate constitutional due process. That ruling was correct and should be affirmed.

## COUNTERSTATEMENT OF ISSUES PRESENTED

1.  Did the District Court correctly rule that Lockheed Martin's designation of a Connecticut agent for service of process alone was insufficient to confer general, all-purpose personal jurisdiction over Lockheed Martin irrespective of federal due process "minimum contacts" requirements?

2.    Did the District Court correctly rule that the assertion of personal jurisdiction over Lockheed Martin would violate the Federal Due Process Clause because Lockheed Martin is not "at home" in Connecticut.

## COUNTERSTATEMENT OF THE CASE

## I.    NONRESIDENT LOCKHEED MARTIN'S LIMITED CONNECTICUT CONTACTS

Lockheed Martin is incorporated and headquartered in the State of Maryland. (Joint Appendix ("JA") 247, 249, 295.) All of Lockheed Martin's activities are directed by and controlled from its Bethesda, Maryland headquarters. (JA 247, 249.) Besides its headquarters in Bethesda, Maryland, Lockheed Martin is composed of five business areas, headquartered and led by one of its Executive Vice Presidents as follows: Information Systems and Global Solutions in Gaithersburg, Maryland; Mission Systems and Training in Manassas, Virginia; Lockheed Martin Aeronautics in Fort Worth, Texas; Missiles and Fire Control in Dallas, Texas; and Space Systems in Denver, Colorado. (JA 248-49.) Lockheed Martin maintains none of its business areas in Connecticut, and none of Lockheed Martin's business areas maintain any of their subordinate business units in Connecticut. (JA 260.)

Lockheed Martin owns no commercial or private real estate in Connecticut (as contrasted with its significant holdings in Texas, Maryland, and California). (JA 261.) Lockheed Martin neither manufactures nor sells any products in

3

Connecticut. (JA 252, 236.) Lockheed Martin does no advertising or marketing in Connecticut. (JA 264, 236.) Lockheed Martin maintains no bank accounts in Connecticut. (JA 264.) Of the millions of boxes of documents stored by Lockheed Martin, only two boxes were located in Connecticut. (JA 263-64.)

At all times between 2008 and 2012 inclusive, less than five one-hundredths of one percent of Lockheed Martin's employees worked in Connecticut. (JA 252-56, 265-66, 278-89, 296-315.) Each and every Lockheed Martin employee in Connecticut provided service, not to Connecticut businesses or residents, but to the United States Government pursuant to federal government contracts. (JA 251, 231-32, 235.) The government actually dictated by contract the salaries that these Connecticut employees would be paid. (JA 239-40.) Lockheed Martin's revenue generated from these Connecticut-based employees in any given year between 2008 and 2012, inclusive, ranged from less than five one-hundredths of one percent to just over one tenth of one percent of Lockheed Martin's total revenue. (JA 249-51, 272-77.)

Lockheed Martin is registered to conduct business in Connecticut and maintains an agent for service of process in Connecticut. (JA 267.) Lockheed Martin leases roughly 9,000 square feet of space in New London, Connecticut for the purpose of assembling, testing, and installing United States Navy-owned submarine towed array sonar systems. (JA 261-62, 232-33.) Pursuant to the terms

4

of the government contract to provide that service, Lockheed Martin must locate its personnel (between six and eight employees) within fifteen miles of the United States Navy submarine base in New London. (JA 232-33, 236, 261-62, 292-93.) The Lockheed Martin employees located in New London report to their program director in San Diego, California, who in turn reports to the Mission Area Director in Suffolk, Virginia, who in turn reports to the Executive Vice President in Dallas, Texas. (JA 233-35.)

Between 2008 and 2012 inclusive, Lockheed Martin employees also have been co-located with Electric Boat Company in Groton, Connecticut; Hamilton-Sundstrand and The Federal Aviation Administration in Windsor Locks, Connecticut; and The United States Department of Housing and Urban Development in Hartford, Connecticut. (JA 251, 256-59, 278-87, 290-91, 235.) All of these employees have performed services only pursuant to United States Government contract. (*Id.*)

## II.  NONRESIDENT DECEDENT WALTER BROWN'S FIRST LAWSUIT AGAINST LOCKHEED MARTIN – FILED IN ALABAMA

In June of 2012, Plaintiff's Decedent, Walter Brown, filed an asbestos-related personal injury lawsuit in the United States District Court for the Southern District of Alabama entitled *Walter E. Brown v. The Boeing Co., et al.,* Case No. 12-cv-414. (JA 319-45.) The Alabama Complaint named fourteen defendants, including Lockheed Martin, and alleged diversity jurisdiction on the grounds that

5

Decedent was "an Alabama resident and Defendants . . . are not corporate citizens of Alabama . . . ." (JA 319-20.)

In July of 2012, Decedent was deposed regarding his work history. Decedent limited his Connecticut-related work to one military professional school (unrelated to Lockheed Martin) in Putnam, Connecticut in the 1950s and the rescue of one aircraft (unrelated to Lockheed Martin) some time before his discharge in 1970. (JA 191, 195, 206-09.) Decedent testified that he retired from work in 1970 and thereafter performed small jobs not located in Connecticut. (JA 199-202.)

Decedent voluntarily dismissed his Alabama lawsuit after Lockheed Martin filed a motion for judgment on the pleadings based on Alabama's statute of limitations. (JA 109-14.)

## III. NONRESIDENT DECEDENT'S SECOND LAWSUIT AGAINST LOCKHEED MARTIN – FILED IN CONNECTICUT

After voluntarily dismissing his Alabama lawsuit, Decedent re-filed a virtually identical Complaint against Lockheed Martin and others in Connecticut Superior Court. (JA 216-17.) Decedent again admitted in his Connecticut Complaint that he was an Alabama resident. (JA 217.) Shortly thereafter, Lockheed Martin removed the action to the United States District Court for the District of Connecticut. (JA 50, 71-76.) Following Decedent's death, Plaintiff filed an amended complaint as the personal representative of Decedent's estate. (JA 54, 219.) Plaintiff, like Decedent, is an Alabama resident. (JA 219.)

6

The District Court permitted Plaintiff to amend the first amended complaint such that the operative complaint asserts causes of action for negligence, willful misconduct, and wrongful death. (JA 58, 221-27.) Plaintiff contends that Decedent "was exposed to various asbestos containing products through his work in the United States Air Force as an airplane mechanic from 1950-70." (JA 222.) Plaintiff further alleges that "such exposure contributed in part or totally to the [decedent]'s contraction of asbestos-related mesothelioma and other asbestos-related pathologies." (JA 223.)

At his deposition, Decedent claimed that he worked on multiple military aircraft, including Lockheed Martin manufactured T-33, F-80, and F-94 aircraft at locations in Alabama, Illinois, Delaware, Germany, and France. (JA 210-13, 189-90, 192, 198.) Decedent did not identify, let alone allege asbestos exposure from, any Lockheed Martin product or premises in Connecticut. (JA 191, 195, 206-09.)

## IV. THE CONNECTICUT FEDERAL DISTRICT COURT'S DISMISSAL OF LOCKHEED MARTIN FOR LACK OF PERSONAL JURISDICTION

In November of 2013, after the District Court permitted Plaintiff to conduct jurisdictional discovery, Lockheed Martin filed a motion to dismiss Plaintiff's complaint for lack of personal jurisdiction. (JA 181-82, Special Appendix ("SA") 1-2.) In May of 2014, following extensive briefing, the District Court issued an order granting Lockheed Martin's motion. (SA 1-23); *see Brown v. CBS Corp.*, 19

7

F. Supp. 3d 390 (D. Conn. 2014). After "assuming the facts that the plaintiff has alluded to in her memoranda are true, and ignoring any facts provided by Lockheed that may conflict with the plaintiff's statement of facts," the court ruled that Plaintiff "failed to make a *prima facie* showing that this court can exercise personal jurisdiction" over Lockheed Martin. (SA 22.)

In so ruling, the District Court concluded, as a threshold matter, that Connecticut's foreign corporation long-arm statute applied to Lockheed Martin. (SA 6-12.) It observed that, because "Lockheed Martin has registered to do business in Connecticut, and has been authorized to transact business here," the long-arm statute, Conn. Gen. Stat. § 33-929(a), "can confer personal jurisdiction . . . , but the requirements of the due process clause must also be met." (SA 8, 12.) The court rejected Plaintiff's argument that, by merely complying with Connecticut's business registration statutes, Lockheed Martin consented to unlimited, all-purpose jurisdiction of Connecticut courts, irrespective of whether such jurisdiction otherwise complied with due process. (SA 12.)

Second, the District Court ruled that its assertion of personal jurisdiction over Lockheed Martin would violate due process because Lockheed Martin was not "at home" in Connecticut. (SA 12-22.) After noting that "[i]t is undisputed that the plaintiff's claims in this case do not arise out of or relate to Lockheed's activities within Connecticut" (and thus did not implicate specific personal

8

jurisdiction), the court applied the Supreme Court's teachings from *Daimler AG v. Bauman*. (SA 15-16.) It assessed Lockheed Martin's "contacts with Connecticut . . . in relation to its operations as a whole," and concluded that "in every respect, [Lockheed Martin]'s contacts are less extensive and substantial than those found by the Supreme Court to be insufficient to establish general personal jurisdiction in *Daimler*." (SA 16, 19.)

The court entered a final judgment dismissing Lockheed Martin on October 2, 2014. (JA 508-10.) Plaintiff appealed. (JA 511.)

## STANDARD OF REVIEW

This Court "review[s] a district court's legal conclusions concerning its exercise of personal jurisdiction de novo, and its underlying factual findings for clear error." *Troma Entm't, Inc. v. Centennial Pictures, Inc.*, 729 F.3d 215, 217 (2d Cir. 2013). "A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it brings suit." *Id.* While, "[a]t this stage of the proceedings, a plaintiff need only make a prima facie showing that jurisdiction exists," *id.* (internal quotation marks omitted), that prima facie showing requires some "factual specificity" and may not be established through conclusory assertions alone. *Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 185 (2d Cir. 1998). Moreover, "[w]hen a motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other written materials . . . [t]he allegations

9

in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Seetransport Wiking Trader v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993) (citations omitted). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ." *Id.*

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY RULED THAT LOCKHEED MARTIN'S COMPLIANCE WITH CONNECTICUT'S BUSINESS REGISTRATION STATUTE DOES NOT CONSTITUTE CONSENT TO THE ASSERTION OF GENERAL PERSONAL JURISDICTION IN CONNECTICUT

A court assessing personal jurisdiction must "determine whether jurisdiction exists over a defendant by looking to 'the law of the state where the court sits,' unless 'a state's assertion of jurisdiction contravenes a constitutional guarantee.'" *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963)). "To determine personal jurisdiction over a non-domiciliary . . . , the Court must engage in a two-step analysis." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). "First, we apply the forum state's long arm statute . . . [and] if the long arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process

10

Clause of the United States Constitution." *Id.* at 163-64 (applying "minimum contacts" due process analysis to foreign corporation).

Here, Plaintiff hinges her personal jurisdiction argument entirely on the notion that, merely by appointing a registered agent for service of process (as required of foreign corporations by Connecticut law), Lockheed Martin consented to the jurisdiction of Connecticut courts for *all* purposes – without further consideration of any due process considerations. The District Court correctly rejected this argument, reasoning that a foreign corporation's designation of an agent for service of process constitutes, at most, consent consistent with the limits of federal due process, "minimum contacts" analysis.

### A. Lockheed Martin's Designation Of A Connecticut Agent For Service Of Process Does Not Constitute Consent To All-Purpose, General Personal Jurisdiction

Connecticut law is clear – "a trial court may exercise jurisdiction over a foreign defendant *only* if the defendant's intrastate activities meet the requirements *both* of [the state's long arm] statute *and* of the due process clause of the federal constitution." *Thomason v. Chem. Bank*, 661 A.2d 595, 598 (Conn. 1995) (emphasis added). "[T]he first inquiry must be whether our long arm statute authorizes the exercise of jurisdiction under the particular facts of this case. Only if we find the statute to be applicable do we reach the question whether it would offend due process to assert jurisdiction." *Lombard Bros., Inc. v. Gen. Asset*

11

*Mgmt. Co.*, 460 A.2d 481, 484 (Conn. 1983); *see also Knipple v. Viking*

*Commc'ns, Ltd.*, 674 A.2d 426, 428-29 (Conn. 1996) (same).

Connecticut's long-arm statute pertaining to foreign corporations is Conn.

Gen. Stat. § 33-929, which states, in part:

> (a) The registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on the foreign corporation.

> \*\*\*

> (e) Every foreign corporation which transacts business in this state in violation of section 33-920 shall be subject to suit in this state upon any cause of action arising out of such business.

> (f) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

> > (1) out of any contract made in this state or to be performed in this state;

> > (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state;

> > (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced,

12

manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or

(4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(a), (e), (f).[1]

Plaintiff's jurisdictional claim against Lockheed Martin rests entirely on § 33-929(a). This statute is silent regarding the jurisdictional significance, if any, of a foreign corporation's designation of an agent for service of process. The Connecticut Supreme Court likewise has not specifically addressed this issue. However, a Connecticut Appellate Court analyzed it extensively in *Wallenta v. Avis Rent A Car System, Inc.*, 522 A.2d 820 (Conn. App. Ct. 1987), and confirmed, consistent with Connecticut Supreme Court authority, that service of process on a foreign corporation's registered Connecticut agent *can* confer jurisdiction, *but only if* such jurisdiction otherwise comports with the federal Due Process Clause. *Id.* at 824.

In *Wallenta*, the plaintiff sued a foreign corporation in Connecticut for alleged injuries incurred in an automobile accident in Alabama. *Id.* at 821. The

---

[1] Connecticut defines a foreign corporation as "a corporation incorporated under a law other than the law of this state." Conn. Gen. Stat. § 33-602(15). Lockheed Martin is incorporated under the laws of the State of Maryland, and thus is a foreign corporation under Connecticut law. (JA 295.)

defendant corporation had designated a Connecticut registered agent under the predecessor statute to § 33-929(a) – Conn. Gen. Stat. § 33-411(a) (repealed 1997).[2] *Id.* The *Wallenta* plaintiff, like Plaintiff here, argued that "the defendant ha[d] subjected itself for all purposes to the jurisdiction of the [Connecticut] court by naming an agent for service of process . . . ." *Wallenta*, 522 A.2d at 821. As the *Wallenta* court explained, "this appeal boils down to determining whether . . . compliance with the statutory requirement of appointing an agent for service of process is, in effect, a consent to jurisdiction of this state's courts for determination of a cause of action arising out of a [rental car] contract entered into by it and a citizen of this state, but executed in another state." *Id.* at 822. After analyzing Connecticut's long-arm statute, the court held:

> [A] foreign corporation which has appointed an agent for service of process because it has acknowledged that it is conducting business within this state ***will be subject to suit in this state upon any cause of action arising out of such business***. A corporation which complies with the requisites of General Statutes § [33-929(a)] has, in fact, consented to the exercise of jurisdiction by the courts of this state.

*Id.* at 823 (emphasis added). The court specified that the "business in this state" to which the registered agent's consent extends is limited either to business activities

---

2 The relevant provisions of now-repealed § 33-411(a) are sufficiently similar to current § 33-929(a) so as to be interchangeable. *Compare Wallenta,* 522 A.2d at 823 n.6 (quoting § 33-411(a)), *with* Conn. Gen. Stat. § 33-929(a); *see also* SA 8 at n.1.

within Connecticut or those non-Connecticut activities itemized in § 33-411(c), now § 33-929(f).[3]  *Id.* at 822-24.

This conclusion did not end *Wallenta*'s jurisdictional inquiry, however – it emphasized that "the next question to be resolved is . . . whether personal jurisdiction over the defendant would offend due process on the basis of the facts of this case." *Id.* at 824.  The court remanded the matter to the trial court for a factual determination of whether the foreign corporation "could reasonably have anticipated a suit in Connecticut arising from the contract executed in Alabama" – *i.e.*, the propriety of specific jurisdiction.  *Id.*  Significantly, the *Wallenta* court never considered, let alone suggested, that a foreign corporation's designation of a registered agent, on its own, could constitute consent to all-purpose, general jurisdiction.  As the District Court here explained, "*Wallenta* stands for the proposition that § 33-929(a) can authorize the exercise of personal jurisdiction over a registered foreign corporation under the long-arm statute, thereby satisfying the

---

[3] The provisions of now-repealed Conn. Gen. Stat. § 33-411(c) are substantively identical to the current Conn. Gen. Stat. § 33-929(f).  *Compare Wallenta*, 522 A.2d at 821 n.3 (quoting § 3-411(c)), *with* Conn. Gen. Stat. § 929(f).

first prong of the personal jurisdiction inquiry under Connecticut law, but the assertion of jurisdiction cannot offend due process." (SA 9.)[4]

Despite *Wallenta*'s common-sense holding based on well-settled Connecticut Supreme Court precedent, Plaintiff argues that Connecticut supposedly has dispensed with federal due process protections for foreign corporations that designate a Connecticut agent for service of process. (Appellant's Brief ("AB") at 17-20.) Plaintiff relies on one footnote in one Connecticut appellate court decision, *Talenti v. Morgan & Bro. Manhattan Storage Co., Inc.*, 968 A.2d 933 (Conn. App. Ct. 2009). *Talenti* is factually distinguishable and otherwise does not alter Connecticut's consistent application of jurisdictional due process considerations.

In *Talenti*, the plaintiff sued a defendant that "***maintain[ed] its principal place of business in Connecticut***" for alleged employment-related torts committed ***in Connecticut***. *Id.* at 935 (emphasis added). The Connecticut-headquartered defendant was incorporated under New York law, but was authorized to do business in Connecticut. *Id.* The plaintiff served defendant "at the defendant's

---

[4] *Wallenta* held that a foreign corporation's designation of a registered agent operates as consent to jurisdiction, at most, only as to those business activities within Connecticut or within the scope of activities itemized in § 33-411(c), the predecessor to current § 33-929(f). *Wallenta*, 522 A.2d at 823-24. Plaintiff's allegations against Lockheed Martin have nothing to do with Lockheed Martin's Connecticut activities or any conduct that would permit jurisdiction under § 33-929(f).

corporate headquarters in Greenwich," Connecticut, and at a corporate executive's

Connecticut home. *Id*. at 936. In response to the *Talenti* defendant's jurisdictional

motion to dismiss, the plaintiff argued that personal jurisdiction was appropriate

because:

> **the defendant maintains its principal place of business in**
> **Connecticut**, is authorized to do business in Connecticut,
> accepts service of process in Connecticut, . . . and **they seek**
> **redress for acts that took place in Connecticut**.

*Id*. at 937 (emphasis added).

The *Talenti* court agreed that it could assert personal jurisdiction over the

defendant. The court noted that the defendant "consented to the exercise of

jurisdiction over it by the courts of this state" by agreeing to accept service in

Connecticut as required by Connecticut's business registration statutes. *Id*. at 940.

In so ruling, the *Talenti* court relied entirely on *Wallenta. Id*. The court also

included a footnote stating that "the court does not need to undertake any analysis

of any constitutional due process issues" because "defendant has consented to

jurisdiction." *Id*. at 941 n.14. This footnote, however, cited no authority.

*Talenti* does nothing to aid Plaintiff's campaign to divest Lockheed Martin,

a foreign corporation, of its constitutional protections. Unlike Plaintiff here, the

*Talenti* plaintiff sued a **Connecticut-headquartered** defendant for alleged

**Connecticut-based** torts. *Id*. at 935. These two facts alone were sufficient to

establish both general and specific jurisdiction consistent with federal due process

– regardless of whether the *Talenti* court deemed it unnecessary "to undertake an analysis of any constitutional due process issues." *Id.* at 941 n.14. Moreover, no Connecticut appellate court has relied on *Talenti* to dispense with a federal due process analysis concerning jurisdiction over *any* defendant, let alone a foreign corporation.[5] Indeed, the only published decision to address *Talenti* (other than the District Court in the instant action), is *WorldCare Ltd., Corp. v. World Ins. Co.*, 767 F. Supp. 2d 341 (D. Conn. 2011), which concurred with *Wallenta* that the designation of a registered agent for service of process does not waive a foreign corporation's jurisdictional due process rights.[6]

---

[5] Plaintiff notes that "the Connecticut Supreme Court denied *certiorari* in *Talenti*," implying that it supposedly approved of *Talenti*'s footnote 14. (AB at 22.) However, "it is ***well established that the [Connecticut Supreme Court's] denial of a petition for certiorari to appeal does not signify that [the] court approves of or affirms the decision or judgment of the Appellate Court.***" *Hylton v. Gunter*, 97 A.3d 970, 974 n.5 (Conn. 2014) (citations omitted) (emphasis added). Moreover, *Talenti*'s assertion of jurisdiction over a Connecticut-headquartered defendant for an alleged Connecticut-based tort clearly was consistent with constitutional due process, thus militating against further appellate review.

[6] Given the absence of any appellate authority favorably citing *Talenti*, Plaintiff instead cites two unpublished Connecticut trial court orders. Not only do Connecticut trial court orders carry no precedential weight (*see e.g., McDonald v. Rowe*, 682 A.2d 542, 545 (Conn. App. Ct. 1996)), neither order is analogous to the instant lawsuit. In *Yates v. United Car Rentals, Inc.* No. CV075010375S, 2008 WL 2169436 (Conn. Super. Ct. May 8, 2008), the defendant, like the *Talenti* defendant, was headquartered in Connecticut. *Id.* at *1. Moreover, despite acknowledging that *Wallenta* is "controlling," the trial court nonetheless declined to conduct a *Wallenta*-mandated, jurisdictional due process analysis. *Id.* at *4-5. The second trial court order cited by Plaintiff, *Lake Road Trust, Ltd. v. ABB, Inc.*, No. HHDX04CV106016502S, 2011 WL 1734458 (Conn. Super. Ct. April 11, 2011), involved a plaintiff suing for an allegedly defective product sold to a Connecticut

[Footnote continued on next page]

18

In *WorldCare,* the plaintiff, like Plaintiff here, relied on the *Talenti* footnote to argue that federal jurisdictional due process is irrelevant once a foreign corporation designates an agent for service. *Id.* at 347-48. Rejecting the plaintiff's argument, the *WorldCare* court noted that "the Connecticut Supreme Court has traditionally applied the due process analysis as the second step in evaluating personal jurisdiction" over foreign corporations. *Id.* at 356 (citing *Knipple*, 674 A.2d 428-29 and *Lombard*, 460 A.2d at 485-86). "In such cases, the court has addressed (1) whether the terms of the long-arm statute have been satisfied and then (2) whether the defendant had sufficient contacts with Connecticut to comport with due process." *WorldCare*, 767 F. Supp. 2d at 356. The *WorldCare* court likewise observed that *Wallenta* affirmed this traditional two-step application, and further noted:

> Expansive, non-explicit consent to being haled into court *on any claim whatsoever* in a state in which one lacks minimum contacts goes against the longstanding notion that personal jurisdiction is primarily concerned with fairness.
>
> ***
>
> [O]ne must question whether the legislature of Connecticut intended that whenever a foreign corporation . . . obtains a

---

[Footnote continued from previous page]
purchaser for use in Connecticut, thus providing a constitutional basis for asserting specific jurisdiction. *Id.* at *1. The trial court simply parroted *Talenti* in declining to specifically address constitutional due process. *Id.* at *6.

> license to do business in Connecticut, it knowingly consents to
> jurisdiction *for any claim whatsoever, regardless of the extent
> of its contacts with Connecticut.* It would seem much more
> likely that the Connecticut legislature contemplated consent to
> encompass consent to service and *to jurisdiction over matters
> which are constitutional under a due process analysis.*

*Id.* at 355 (emphasis in original).

In short, Plaintiff cites no Connecticut authority asserting personal jurisdiction, let alone jurisdiction deemed consistent with federal due process, under circumstances analogous to those here – a non-resident plaintiff suing a foreign corporation domiciled outside Connecticut for activities bearing no connection to the defendant's Connecticut contacts. The cases on which Plaintiff relies involved either Connecticut-headquartered defendants (*Talenti* and *Yates*), alleged tortious conduct directed to a Connecticut plaintiff (*Lake Road Trust*), or both (*Talenti*). Plaintiff's theory that Connecticut condones limitless jurisdictional "consent-by-registration" literally is without precedent. The District Court below, like *Wallenta* and *WorldCare*, correctly applied Connecticut Supreme Court authority in concluding that a foreign corporation's designation of a registered agent for service may be sufficient, at most, only to satisfy "the first prong of the two-step [jurisdictional] analysis." (SA 12.)

### B.     Plaintiff's Non-Connecticut Authority Is Distinguishable And Inapplicable

Given the absence of Connecticut authority supporting her limitless jurisdiction theory, Plaintiff cites a handful of other states' long-arm statutes that supposedly have been interpreted to permit consent-by-registration.  (AB at 19-21.) However, the out-of-state authority cited by Plaintiff serves only to highlight why a district court *in Connecticut* properly declined to interpret Connecticut's statute in the manner proposed by Plaintiff.  The respective out-of-state decisions are discussed below:

- New Hampshire – In *Holloway v. Wright & Morrissey, Inc.*, 739 F.2d 695 (1st Cir. 1984), the First Circuit analyzed New Hampshire's long-arm statute, containing language virtually identical to § 33-929(a), and held that a foreign corporation's consent to jurisdiction, if any, extended only to lawsuits "***causally connected to the defendant's acts in New Hampshire***, and where New Hampshire has an interest in the litigation." *Id*. at 699 (emphasis added).  This limitation falls squarely within the contours of constitutional due process and, if applied here, would compel affirmation of the District Court's dismissal of Lockheed Martin.

- Minnesota – The Eighth Circuit interpreted Minnesota's long-arm statutes to permit unlimited jurisdictional consent-by-registration in *Knowlton v. Allied Van Lines, Inc.,* 900 F.2d 1196 (8th Cir. 1990).  In so ruling, the Eighth Circuit reasoned that "the Supreme Court of Minnesota has interpreted the statutes in just this way." *Id*. at 1200. Here, by contrast, the Connecticut Supreme Court never has interpreted Connecticut's corporate long-arm statute in the manner proposed by Plaintiff.

- Pennsylvania – The Third Circuit interpreted Pennsylvania's long-arm statute to permit unlimited, jurisdictional consent-by-registration in *Bane v. Netlink, Inc.*, 925 F.2d 637 (3d Cir. 1991).  The Pennsylvania

21

statute, unlike Connecticut's statute, "explicitly states that qualification of a foreign corporation to do business is sufficient contact to serve as the basis for the assertion of [general] personal jurisdiction." *Id.* at 640 (citing 42 Pa. Cons. Stat. Ann. § 5301(a)).

- Delaware – In *Acorda Therapeutics, Inc. v. Mylan Pharms., Inc.*, No. 14-935-LPS, 2015 WL 186833, at *10 (D. Del. Jan. 14, 2015), *appeal filed*, No. 15-1456 (Fed. Cir. March 17, 2015), a Delaware district court judge interpreted Delaware's long-arm statute to permit unlimited jurisdictional consent-by-registration. As in *Knowlton*, the *Acorda* court reached this conclusion because the Delaware Supreme Court had "unambiguously held" for decades that "registration to do business in Delaware constitutes consent to the general jurisdiction of courts in Delaware . . . ." *Id.*[7]

Not only does Plaintiff's selectively-cited authority demonstrate why asserting jurisdiction over Lockheed Martin is not appropriate in this case, but the majority of federal appellate circuits nationwide hold that mere service of process on a foreign corporation's registered agent, without more, is insufficient to

---

[7] Significantly, the judge in *Acorda* acknowledged that its conclusion may be incorrect in light of the United States Supreme Court's recent *Daimler* decision. *Acorda*, 2015 WL 186833, at *14 (citing *Daimler*, 134 S. Ct. at 761). Specifically, the *Acorda* judge noted that his ruling was "in tension with the holding in *Daimler* that it would be 'unacceptably grasping' to find general jurisdiction over a corporation 'in every State in which a corporation engages in a substantial, continuous, and systemic course of business.'" *Id.* The *Acorda* judge further recognized that another Delaware district court judge, relying on *Daimler*, had rejected the notion that "mere compliance with [business registration] statutes" could be sufficient to assert general jurisdiction over a foreign corporation. *Acorda*, 2015 WL 186833, at *13-14 (citing *AstraZeneca v. Mylan*, No. 14-696-GMS, 2014 WL 5778016, at *5 (D. Del. Nov. 5, 2014), *appeal filed*, No. 15-1460 (Fed. Cir. March 17, 2015)). The *Acorda* judge further observed that the *AstraZeneca* court's "rejection of consent as a basis for general jurisdiction [over a foreign corporation] is well-reasoned and may well be the correct view." *Acorda*, 2015 WL 186833, at *14.

establish general jurisdiction. Such circuits include the First, Fourth, Fifth, Sixth, Seventh, Ninth, and Eleventh.[8] Indeed, the jurisdictions permitting the assertion of general jurisdiction based solely on a corporation's compliance with business registration statutes are those in which either: (1) the state statute expressly states that business registration constitutes consent to general jurisdiction (such as Pennsylvania), or (2) the state's supreme court has interpreted the business registration statute to constitute consent to general jurisdiction (such as Minnesota and Delaware). Neither of these circumstances exists in Connecticut. Simply put, the out-of-state authority cited by Plaintiffs serves only to emphasize why, ***in***

---

[8] *See N. Am. Catholic Educ. Programming Found., Inc. v. Cardinele*, 567 F.3d 8, 16 n.6 (1st Cir. 2009) ("courts have consistently held that appointment of an agent of process alone does not suffice to allow for the exercise of general jurisdiction."); *Ratliff v. Cooper Laboratories, Inc*., 444 F.2d 745, 748 (4th Cir. 1971) ("[w]e think the application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight . . . . The principles of due process require a firmer foundation than mere compliance with state domestication statutes"); *Siemer v. Learjet Acquisition Corp*., 966 F.2d 179, 182-83 (5th Cir. 1992) ("this Court has found [no case] that supports the proposition that the appointment of an agent for process and the registration to do business within the state, without more, suffices to satisfy the criteria for the exercise of general jurisdiction . . . . all assertions of personal jurisdiction must satisfy the contacts and fairness requirements enunciated in *International Shoe.* "); *Pittock v. Otis Elevator Co*., 8 F.3d 325, 329 (6th Cir. 1993) ("the mere designation of an agent in compliance with the service-of-process statute does not eliminate the requirement of minimum contacts to establish personal jurisdiction."); *Wilson v. Humphreys (Cayman) Ltd*., 916 F.2d 1239, 1245 (7th Cir. 1990) ("[r]egistering to do business . . . cannot satisfy . . . standing alone . . . the demands of due process.); *King v. Am. Family Mut. Ins. Co*., 632 F.3d 570, 579 (9th Cir. 2011) (holding that a corporation's designation of an agent for in-state service of process is insufficient to establish general jurisdiction); *Consol. Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1293 (11th Cir. 2000) ("[c]ourts of appeal that have addressed the issue have rejected the argument that appointing a registered agent is sufficient to establish general personal jurisdiction over a corporation.").

*Connecticut*, a foreign corporation's compliance with business registration statutes does not constitute consent to all-purpose, general jurisdiction.

## II. THE DISTRICT COURT CORRECTLY RULED THAT LOCKHEED MARTIN IS NOT "AT HOME" IN CONNECTICUT

The District Court correctly ruled that, even assuming Connecticut's long-arm statute applies, the assertion of jurisdiction over Lockheed Martin in this case would violate federal due process. As a threshold matter, specific jurisdiction is *not* at issue here because "it is undisputed that the plaintiff's claims in this case do not arise out of or relate to Lockheed [Martin]'s activities within Connecticut." (SA 15-16.) The sole question is whether Lockheed Martin can be considered "at home" in Connecticut under the due process standard recently clarified by the United States Supreme Court in *Daimler AG v. Bauman,* 134 S. Ct. 746 (2014). The District Court properly concluded that Connecticut is *not* Lockheed Martin's home.

### A. The *Daimler* Decision

In *Daimler*, two Argentinians filed suit in California federal court against Daimler AG, a German corporation, alleging claims under the Alien Tort Statute and Torture Victims Protection Act. *Id.* at 751. The plaintiffs maintained that general jurisdiction over Daimler was founded on the "continuous and systematic" California contacts of Daimler's subsidiary, Mercedes-Benz USA, LLC (MBUSA). *Id.* at 760-61. The Supreme Court assumed (without deciding) that MBUSA was

24

"at home" in California and that the following MBUSA California contacts *were*

*imputed to Daimler*:

> 1) MBUSA was the exclusive importer of Mercedes-Benz vehicles
> into the United States;
>
> 2) MBUSA had "multiple California-based facilities, including a
> regional office in Costa Mesa, a Vehicle Preparation Center in
> Carson, and a Classic Center in Irvine;"
>
> 3) MBUSA was "the largest supplier of luxury vehicles to the
> California market," which garnered over "10% of all sales of new
> vehicles in the United States;" and
>
> 4) "MBUSA's California sales account[ed] for 2.4% of Daimler's
> worldwide sales," with annual sales revenue totaling $4.6 billion.

*Id. at* 752, 758, 760.

Finding Daimler's California contacts insufficient to justify general

jurisdiction, *Daimler* reaffirmed the holding in *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011), that "the paradigm forum for

the exercise of general jurisdiction" is a corporation's "place of incorporation and

principal place of business . . . ." *Daimler*, 134 S. Ct. at 760. Rejecting the notion

that a corporate defendant should be subject to general jurisdiction "in every State

in which [it] engages in a substantial, continuous, and systematic course of

business," the Court clarified *Goodyear*, explaining that:

> the inquiry under *Goodyear* is *not* whether a foreign
> corporation's in-forum contacts can be said to be in some sense
> 'continuous and systematic,' it is whether the corporation's

25

'affiliations with the State are so continuous and systematic as
to render it essentially at home in the forum state.'

*Id*. at 761 (emphasis added) (citations omitted).

The Court further explained that general jurisdiction "calls for an appraisal

of a corporation's activities ***in their entirety, nationwide and worldwide***," and "a

corporation that operates in many places can scarcely be deemed at home in all of

them. Otherwise, 'at home' would be synonymous with 'doing business' tests

framed before specific jurisdiction evolved in the United States." *Id*. at 762 n.20

(emphasis added). "[T]he exercise of general jurisdiction in every state in which a

corporation engages in a substantial, continuous, and systematic course of

business" would be "***unacceptably grasping***." *Id*. at 761 (internal quotations

omitted) (emphasis added).

The Supreme Court did not completely "foreclose the possibility of an

***exceptional case***," in which "a corporation's operations in a forum other than its

formal place of incorporation or principal place of business may be so substantial

and of such a nature as to render the corporation at home in that State." *Id.* at 761

n.19 (emphasis added). As an example of an exceptional case, the Court cited the

only case in which it has ever upheld the exercise of general jurisdiction: *Perkins v.*

*Benguet Consol. Mining Co.,* 342 U.S. 437 (1952). *Daimler*, 134 S. Ct. at 755-56,

761 n.19 ("*Perkins* . . . remains the textbook case of general jurisdiction.")

26

In *Perkins,* the defendant was incorporated under the laws of, and operated mines in, the Philippines. *Perkins*, 342 U.S. at 438-39. During World War II, the defendant's Philippine "operations were completely halted during the occupation of the Islands by the Japanese." *Id.* at 447. The defendant's president, who also was its general manager and principal stockholder, returned to his home in Ohio. *Id.* "***All*** of [the defendant's] activities were directed by the company's president within Ohio" where, among other things, he "kept an office, maintained the company files, and oversaw the company's wartime activities." *Daimler*, 134 S. Ct. at 756 n.8 (emphasis added) (citing *Perkins*, 342 U.S. at 447-48). The Supreme Court concluded that it had general jurisdiction over the defendant because, as explained in *Daimler*, "Ohio was the corporation's principal, if temporary, place of business." *Daimler,* 134 S. Ct. at 756.

The *Daimler* Court further explained that, "[g]iven the wartime circumstances [in *Perkins*], Ohio could be considered "a ***surrogate*** for the place of incorporation or head office." *Daimler*, 134 S. Ct. at 756 n.8 (emphasis added). Therefore, under *Perkins*, as *Daimler* explains, when a defendant's ***formal*** place of incorporation or principal place of business is not (or no longer remains) the ***actual*** place of incorporation or principal place of business, courts may supplant the formal place of incorporation or principal place of business with an "[in]formal" state of incorporation or principal place of business. *Id.* at 756. Simply put,

27

"those who live or operate *primarily* outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (emphasis added).

### B. Lockheed Martin's Connecticut Contacts Do Not Render It "At Home" In Connecticut

Here, the District Court correctly concluded that *Daimler* is directly applicable to, and dispositive of, Lockheed Martin's jurisdictional challenge. Like *Daimler,* Plaintiff here sues Lockheed Martin in Connecticut for alleged conduct having no connection whatsoever to Lockheed Martin's Connecticut contacts. Lockheed Martin neither is incorporated in Connecticut nor has its principal place of business in Connecticut (JA 247, 249, 295), and its Connecticut contacts are significantly less substantial than Daimler's contacts with California. As described by Plaintiff, Lockheed Martin's Connecticut contacts consist of the following:

> [Lockheed Martin] has had a facility in New London since 1982. It has leased and occupied the same 9,000 square foot building since at least 1997, which displays the Lockheed Martin name on the building and has a Connecticut phone number. It keeps a permanent work force of 6 to 8 Connecticut employees . . . [D]ozens of Lockheed Martin employees have worked at the submarine base [in Groton] and the Electric Boat shipyard. Lockheed Martin also maintains permanent employees at two locations in Windsor Locks, and one in Hartford. It has relationships with Connecticut businesses like Electric Boat and Hamilton Substrand[sic], where Lockheed Martin employees are embedded. Lockheed Martin derives substantial revenue from these contacts, amounting to about $160 million between 2008 and 2012. Lockheed Martin . . . pay[s] state income taxes and carr[ies] workers' compensation

28

insurance.  Since 2008, it has had to defend 8 lawsuits filed against it in Connecticut state and federal courts, as well as one labor complaint investigated by the Connecticut Department of Labor.

(AB at 27-28.)

As the District Court noted, however, "these contacts represent only a small portion of Lockheed Martin's overall business in the United States." (SA 18.) Indeed, Lockheed Martin derives a tiny fraction of its revenue (between 0.05% and 0.107%) from United States Government service contracts performed by an even tinier fraction (less than 0.05%) of its employees, who are located in Connecticut only because the United States Government requires them to be there.  Simply put, Plaintiff focuses on the *wrong* criteria: absolute numbers/activity instead of relative numbers/activity.  The appropriate question under *Daimler* is: how much of a defendant's activity is in-forum *relative to* a defendant's activity outside the forum.

According to Plaintiff, $160 million grossed over five years is significant for the purpose of establishing that Lockheed Martin is "*at home*" in Connecticut. However, Lockheed Martin realized more than $203 *billion* outside of Connecticut over that same time period.  (JA 249-51, 272-77.)  Lockheed Martin's realization of $160 million of its more than $203 billion in total gross revenue—or 0.08%—in Connecticut falls far short of the $4.6 billion—or 2.4%—of in-state revenue found *insufficient* to render a corporation "at home" in *Daimler*.

29

The same holds true for the number of employees. The issue is not whether any of Lockheed Martin's employees are temporarily or permanently located in Connecticut, *i.e.* whether those employees ***themselves*** are at home in Connecticut. The issue is whether their presence renders ***Lockheed Martin*** "at home" in Connecticut. At all times between 2008 and 2012 inclusive, ***less than five one-hundredths of one percent*** of Lockheed Martin's employees worked in Connecticut. (JA 252-56, 265-66, 278-89, 296-315.) No remotely reasonable definition of "at home" could include such a tiny fraction.

Lockheed Martin is incorporated and headquartered outside Connecticut, comprises five separate business areas that are all outside Connecticut, manufactures, sells, and distributes all of its products outside Connecticut, owns all of its real estate outside Connecticut, maintains all of its bank accounts outside Connecticut, conducts all of its marketing and advertising outside Connecticut, and stores virtually all of its corporate records outside Connecticut. Combined with these facts, the extremely low percentages of revenue generated from, and employees located in Connecticut, render Lockheed Martin "at home" somewhere ***other*** than Connecticut.

Finally, Plaintiff ignores ***why*** Lockheed Martin is present in Connecticut at all. Lockheed Martin maintains a presence in Connecticut solely because the United States Government requires that presence. (JA 232-33, 235-36, 251, 256-

30

59, 261-62, 278-87, 290-93.) Lockheed Martin does not solicit business from any Connecticut resident. (JA 251, 231-32, 235-36, 264.) The fact that a corporate defendant is present in a particular forum *not* to solicit business from forum residents but incidentally to its business with a non-forum resident is an additional factor demonstrating that it is not "at home" in the forum.

In short, given that the *Daimler* defendant's multiple California offices providing services directly to California residents and generating billions of dollars in California revenue totaling 2.4 % of Daimler's annual worldwide sales "plainly do not approach [the] level" for imposing general jurisdiction, the same equally is true for Lockheed Martin's far less extensive Connecticut contacts. (*See also* SA18-19 (court order summarizing jurisdictional insignificance of Lockheed Martin's Connecticut contacts).)

### C.    Plaintiff's Attempt To Distinguish *Daimler* Is Unavailing

Given *Daimler*'s dispositive impact, Plaintiff seeks to distinguish it with multiple meritless arguments, all of which ignore the decision's plain language.

*First*, relying entirely on pre-*Daimler* and pre-*Goodyear* authority, Plaintiff contends that "courts commonly find the existence of continuous and systemic contacts when there is evidence that the defendant has established an office or facility in the forum state." (AB at 25.) Plaintiff likewise asserts that *Daimler*'s "at home" analysis "was merely conveying the requirement that a foreign

31

corporation's contacts must approximate physical presence to satisfy due process."
(*Id.* at 32.) *Daimler* says nothing of the sort. In fact, the Supreme Court ruled just
the opposite – mere presence in a forum, even if "substantial, continuous, and
systemic," is insufficient to justify general jurisdiction. *Daimler*, 134 S. Ct. at 760-61.

**Second**, Plaintiff argues that *Daimler* "addressed personal jurisdiction in an
international context," and "the instant case does not involve a parent corporation
or a non-U.S. corporation or events occurring outside this country." (AB, at 29, 31-32.) The *Daimler* decision, however, did not limit its jurisdictional analysis to an
international context, and the decision's significance rests on the fact that the Court
broadly explained how the terms "substantial," "continuous," and "systemic"
should be understood in the context of a general jurisdiction analysis. As the
District Court noted, "in [*Daimler*]'s primary discussion regarding why California
could not assert general jurisdiction over Daimler (Part IV.B of *Daimler*), the
Court never uses the words 'parent' or 'subsidiary' and uses 'foreign' only to refer
to a corporation not being domiciled in the forum state (as opposed to not being
domiciled in the United States in general)." (SA 20); *see also Daimler,* 134 S. Ct.
at 754 ("a court may assert general jurisdiction over foreign (**sister-state** or
foreign-country) corporations" when they are "essentially at home in the forum

state."). Justice Sotomayor likewise acknowledged *Daimler*'s application to domestic corporations when she explained:

> ***[T]he principle announced by the majority would apply equally to preclude general jurisdiction over a U.S. company that is incorporated and has its principal place of business in another U.S. State*.** Under the majority's rule, for example, a General Motors auto-worker who retires to Florida would be unable to sue GM in that State for disabilities that develop from the retiree's labor at a Michigan parts plant, even though GM undertakes considerable business operations in Florida.

*Daimler,* 134 S. Ct. at 773 n.12 (Sotomayor, J., concurring) (emphasis added).

    ***Third*,** Plaintiff's attempt to analogize the California activity of *Daimler* non-party MBUSA to Lockheed Martin's Connecticut activity is irrelevant, both legally and factually. As a legal matter, *Daimler* explicitly did ***not*** decide that MBUSA was subject to general jurisdiction in California. Recognizing MBUSA's unresolved jurisdictional status, the Court observed that "in light of *Goodyear*, MBUSA may ***not*** be amenable to general jurisdiction in California." *Id.* at p. 758 (emphasis added) (citing Briefs of Petitioner and United States as Amicus Curie). Nonetheless, the Court "assume[d] . . . ***for purposes of this decision only***, that MBUSA qualifies as at home in California" because Daimler "failed to object below to plaintiffs' assertion that the California courts could exercise all-purpose jurisdiction over MBUSA."[9] *Id.* at 758 (emphasis added). Here, of course,

---

[9] The *Daimler* lower court briefing occurred before the Supreme Court issued its 2011 *Goodyear* decision. This, coupled with the fact that MBUSA was not sued in *Daimler*,

[Footnote continued on next page]

33

Lockheed Martin *did* object to imposition of "all-purpose jurisdiction" and, unlike

MBUSA, has the benefit of the Supreme Court's *Daimler* and *Goodyear* analyses.

Equally important, and even assuming MBUSA's California activity was sufficient

to justify general jurisdiction under *Daimler*, Plaintiff can make no showing that

Lockheed Martin's Connecticut activity, assessed in the context of its "activities in

their entirety, nationwide and worldwide," is analogous to MBUSA's California

activity – let alone sufficient to be "an exceptional case" as required by *Daimler*.[10]

### D. The *Asahi* "Reasonableness" Factors Are Not Applicable To A General Jurisdiction Analysis

Among its many other clarifications, *Daimler* instructs that the "multi-

pronged reasonableness check" articulated in *Asahi Metal Indus. Co., Ltd. v. Sup.*

*Ct.*, 480 U.S. 102, 112 (1987), applies only to an analysis of specific jurisdiction –

*not* general jurisdiction. *Daimler*, 134 S. Ct. at 762 n.20 (holding that the *Asahi*

factors are only "to be essayed when *specific* jurisdiction is at issue" and declining

"to import *Asahi*'s 'reasonableness' check into the general jurisdiction

---

[Footnote continued from previous page]
likely explains the absence of a jurisdictional objection on MBUSA's behalf. Regardless, it appears clear from *Daimler* that, if the Court had applied its jurisdictional analysis to MBUSA (rather than assume general jurisdiction for lack of an objection), it would have found that MBUSA was not subject to general jurisdiction in California.

[10] MBUSA, *inter alia*, derived over 10% of its total revenue from California-based sales and was the largest supplier of luxury vehicles in California. *Id.* at 752. By contrast, Lockheed Martin neither manufactures nor sells any products in Connecticut and derives no more than one-tenth of one percent of its revenue from United States Government service contracts performed in Connecticut.

determination") (emphasis in original). The Second Circuit likewise has held that, in the general jurisdiction context, courts "need not 'assess the reasonableness of entertaining the case.'" *Gucci Am., Inc. v. Li*, 768 F.3d 122, 134 n.13 (2d Cir. 2014) (citing *Daimler*, 134 S. Ct. at 762 n.20). The reason is simple – if a defendant is not "at home" in a given jurisdiction, the unconstitutional assertion of jurisdiction is, by definition, unreasonable. Accordingly, the sole jurisdictional question is whether, under *Daimler*'s clarified analysis, Lockheed Martin is "at home" in Connecticut. The undisputed facts establish that Connecticut is not Lockheed Martin's jurisdictional home.

## CONCLUSION

For all of the foregoing reasons, the District Court's judgment should be affirmed.

Dated: April 30, 2015

Respectfully submitted,

GLAZIER YEE LLP

By: */s/ Guy P. Glazier*
     Guy P. Glazier
     Brian T. Clark
707 Wilshire Boulevard, Suite 2025
Los Angeles, California 90017
Phone:    (213) 312-9200
Email:    glazier@glazieryee.com

*Attorneys for Appellee*
*Lockheed Martin Corporation*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel for Defendant/Appellee, certifies that the text of this brief is double-spaced and printed using proportionally spaced 14-point Times New Roman font type. The brief contains 8,343 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), as determined by Word 2010 word processing software.

Dated: April 30, 2015                    GLAZIER YEE LLP

                                         By: */s/ Brian T. Clark*
                                              Brian T. Clark

                                       Attorneys for Appellee
                                       Lockheed Martin Corporation

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on April 30, 2015.

In addition, I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 30, 2015                    GLAZIER YEE LLP

                     By: */s/ Brian T. Clark*
                     Brian T. Clark

                     Attorneys for Appellee
                     Lockheed Martin Corporation