# MAYER·BROWN

Mayer Brown LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101

Main Tel +1 202 263 3000
Main Fax +1 202 263 3300
www.mayerbrown.com

**Dan Himmelfarb**
Direct Tel +1 202 263 3035
Direct Fax +1 202 762 4267
dhimmelfarb@mayerbrown.com

September 28, 2015

BY ELECTRONIC FILING

Catherine O'Hagan Wolfe, Clerk
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *Cindy S. Brown v. Lockheed Martin Corp.*,
      No. 14-4083-cv (to be argued Oct. 8, 2015)

Dear Ms. Wolfe:

Pursuant to Fed. R. App. P. 28(j), defendant-appellee Lockheed Martin Corporation ("Lockheed Martin") respectfully submits this letter to draw the Court's attention to the attached supplemental authority.

One of the issues in this appeal is whether the Due Process Clause permits the exercise of general jurisdiction over a defendant based solely on the defendant's registration to do business in the forum state. Plaintiff-appellant Brown's position is that it does. *See* Opening Br. 14-24; Reply Br. 3-22. Lockheed Martin's position is that it does not. *See* Answering Br. 10-24.

Since the time that Lockheed Martin filed its brief, at least four federal district courts have issued decisions holding that the Due Process Clause does *not* permit the exercise of general jurisdiction based solely on the defendant's registration to do business in the forum state. Those decisions are:

- *Fiduciary Network, LLC v. Buehler*, 2015 WL 2165953, at *4-*6 (N.D. Tex. May 8, 2015) (attachment A);

- *Keeley v. Pfizer Inc.*, 2015 WL 3999488, at *4-*6 (E.D. Mo. July 1, 2015) (attachment B);

- *Public Impact, LLC v. Boston Consulting Group, Inc.*, 2015 WL 4622028, at *4 (M.D.N.C. Aug. 3, 2015) (attachment C); and

- *Hazim v. Schiel & Denver Publ'g Ltd.*, 2015 WL 5227955, at *4 (S.D. Tex. 2015) (attachment D).

Mayer Brown LLP operates in combination with other Mayer Brown entities (the "Mayer Brown Practices"), which have offices in North America, Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Catherine O'Hagan Wolfe, Clerk
September 28, 2015
Page 2

In the second decision, *Keeley*, the Missouri district court found that the position advocated by the plaintiffs there—and by Brown here—is "contrary to the holding in *Daimler* [*AG v. Bauman*, 134 S. Ct. 746 (2014)]." 2015 WL 399488, at *4. The court declined to follow the Eighth Circuit's pre-*Daimler* decision in *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196 (8th Cir. 1990), *see* 2015 WL 399488, at *4 n.2, on which Brown also relies, *see* Opening Br. 19-20.

The other three decisions followed pre-*Daimler* Fourth Circuit or Fifth Circuit precedent adopting the position that Lockheed Martin advocates here.

Sincerely,


/s/ Dan Himmelfarb
Dan Himmelfarb

Attachments

cc:    Counsel of record (by electronic service)


I hereby certify that the body of this letter is 311 words and therefore complies with the 350-word limit in Fed. R. App. P. 28(j).


/s/ Dan Himmelfarb
Dan Himmelfarb


I hereby certify that, on September 28, 2015, I electronically filed the foregoing using the Court's CM/ECF system, which will serve copies on all parties or their counsel of record.


/s/ Dan Himmelfarb
Dan Himmelfarb

Attachment A

2015 WL 2165953
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas,
Dallas Division.

FIDUCIARY NETWORK, LLC, Plaintiff,

v.

Raymond W. BUEHLER, Jr., Schneider
Downs Wealth Management Advisors, LP,
and Schneider Downs & Co., Inc., Defendants.

Civil Action No. 3:15–cv–
0808. | Signed May 8, 2015.

**Attorneys and Law Firms**

Michael A. Birrer, Kyle Austin Perkins, Carrington Coleman Sloman & Blumenthal, Dallas, TX, John P. Barry, Proskauer Rose LLP, Neward, NJ, for Plaintiff.

Katrin U. Schatz, Allyson L. Johnson, Jackson Lewis PC, Dallas, TX, for Defendants.

*MEMORANDUM OPINION AND ORDER*

BARBARA M.G. LYNN, District Judge.

**\*1** Before the Court are Plaintiff's Motion to Remand [Dkt. No. 7] and Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery [Dkt. No. 18]. For the reasons discussed below, Plaintiff's Motion to Remand is **DENIED,** and Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery is **GRANTED.**Because Defendants have filed an Amended Motion to Dismiss for Lack of Personal Jurisdiction and Alternative Motion to Transfer Venue [Dkt. No. 27], Defendant's original Motion to Dismiss for Lack of Jurisdiction and Alternative Motion to Transfer Venue [Dkt. No. 5] is **DENIED** as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 3, 2015, Plaintiff Fiduciary Network, LLC ("Plaintiff" or "Fiduciary") filed suit against Defendants Raymond W. Buehler, Jr. ("Buehler"), Schneider Downs Wealth Management Advisors, LP ("SDWM") and Schneider Downs & Co., Inc. ("Schneider Downs") in the 116th

Judicial District Court of Dallas County, Texas, alleging tortious interference with an existing contract.Dkt. No. 1–1 (Pl.'s Original Pet.). SDWM provides investment and wealth management advice, and Schneider Downs is a certified public accounting firm. Dkt. No. 17 ¶¶ 11–12 (Pl.'s Amended Complaint). Both firms are headquartered in Pittsburgh, Pennsylvania. *Id.* Defendant Buehler is the Chairman of Schneider Downs. *Id.* ¶ 10. Plaintiff seeks relief from SDWM for knowingly interfering with an existing contract between Derek J. Eichelberger ("Eichelberger") and Gibson Capital LLC ("Gibson"), and alleges Schneider Downs and Buehler acted in concert with SDWM. *Id.* ¶¶ 2, 14.

Eichelberger was an investment advisor and junior partner at Gibson. *Id.* ¶ 3. He entered into a non-compete agreement with Gibson which, among other restrictions, allegedly precluded him from working in an investment and wealth advisory capacity in competition with Gibson, or soliciting Gibson's customers or recruiting its employees, for two years after the end of his employment with Gibson. *Id.* Plaintiff is an investor in Gibson and an alleged third-party beneficiary of the non-compete agreement between Eichelberger and Gibson. Plaintiff filed suit in Texas upon learning that SDWM had hired Eichelberger in breach of the non-compete agreement. *Id.* Plaintiff alleges that SDWM initiated negotiations with Gibson and Plaintiff through Buehler to allow Eichelberger to join SDWM and breach his non-compete obligations. *Id.* ¶ 4. Thus, Plaintiff alleges that Schneider Downs acted in concert with SDWM to interfere with Eichelberger's non-compete agreement with Gibson. *Id.* ¶ 14.

On March 11, 2015, Defendants removed the suit to this Court, and shortly thereafter, moved to dismiss the action for lack of personal jurisdiction, or alternatively, to transfer venue to the Western District of Pennsylvania, where a related case is pending. Dkt. No. 5. On March 17, 2015, Plaintiff moved to remand the action to state court. Dkt. No. 7. On March 30, 2015, Plaintiff filed its Amended Complaint, and one day later, filed the instant Motion for Leave to Conduct Jurisdictional Discovery. Dkt. No. 18. In its Motion for Leave to Conduct Jurisdictional Discovery, Plaintiff seeks to take Rule 30(b)(6) depositions of SDWM and Schneider Downs to develop evidence to support its Response to Defendants' Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction.

**\*2** This Court agreed to stay the Response to the Motion to Dismiss and Alternative Motion to Transfer Venue until it ruled on the Motion for Leave to Conduct Jurisdictional

Discovery. Dkt. No. 21. In the meantime, Defendants filed an Amended Notice of Removal, Plaintiff's Motion to Remand has been fully briefed, and Defendants have filed an Amended Motion to Dismiss and Alternative Motion to Transfer Venue. Dkt. Nos. 22–24, 27.

**PLAINTIFF'S MOTION TO REMAND**

**I. Legal Standard for Motion to Remand**
A district court is required to remand an action if, at any time, it appears that the court lacks subject matter jurisdiction. *Bell v. State Farm Lloyds,* No. 3:13–CV–1165–M, 2014 WL 3058299, at *1 (N.D.Tex. July 7, 2014) (Lynn, J.). The removing party has the burden of establishing jurisdiction. *Shearer v. Sw. Serv. v. Life Ins. Co.,* 516 F.3d 276, 278 (5th Cir.2008). To do so, the removing party must "distinctly and affirmatively" allege jurisdictional facts. *Mullins v. TestAmerica, Inc.,* 564 F.3d 386, 397 (5th Cir.2009). In deciding whether remand is proper, a court is required to resolve issues of material fact in the plaintiff's favor, and any doubts must be resolved against removal. *Acuna v. Brown & Root Inc.,* 200 F.3d 335, 339 (5th Cir.2000). However, a district court may rely on the pleadings, consider conflicting evidence, and resolve disputed jurisdictional facts. *Forsythe v. Saudi Arabian Airlines Corp.,* 885 F.2d 285, 291 (5th Cir.1989).

Diversity jurisdiction exists when the parties are citizens of different states, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). No plaintiff can have the same citizenship as any defendant. *Lincoln Pro. Co. v. Roche,* 546 U.S. 81, 89, 126 S.Ct. 606, 163 L.Ed.2d 415 (2005). The citizenship of a limited partnership is determined by the citizenship of its partners. *Harvey v. Grey Wolf Drilling Co.,* 542 F.3d 1077, 1079–81 (5th Cir.2008). A natural person is a citizen of the place where he or she is domiciled, which is determined by examining two factors—the person's place of residence and his or her intent to remain there. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.,* 485 F.3d 793, 798 (5th Cir.2007) (citation omitted).

Evidence of a person's place of residence is prima facie proof of his domicile, and "[a] person's state of domicile presumptively continues unless rebutted with sufficient evidence of change."*Hollinger v. Home State Mut. Ins. Co.,* 654 F.3d 564, 571 (5th Cir.2011). However, domicile is determined from objective facts, and courts give scant weight to statements of intent that conflict with actual facts.

*Cantor v. Wachovia Mortgage, FSB,* 641 F.Supp.2d 602, 608 (N.D.Tex.2009) (citations omitted). In ascertaining a party's domicile, a court addresses a variety of factors, none of which are dispositive, including where the party "exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family."*Coury v. Prot,* 85 F.3d 244, 251 (5th Cir.1996).

**II. Analysis of Motion to Remand**
*3 Plaintiff argues that Defendants' original Notice of Removal did not adequately plead or provide evidence to establish the citizenship of SDWM, a limited partnership.[1] Specifically, Plaintiff argues that Defendants failed to adequately plead the citizenship of the partners of SDWM.[2] Thus, because Defendants did not meet their burden of showing each partner of SDWM is not a citizen of Texas, Fiduciary argues remand is required.

[1]     Dkt. No. 7 at 1; Dkt. No. 1.

[2]     Dkt. 7 at 1 2. Fiduciary argues that Defendants relied on inadmissible evidence in their effort to establish citizenship because the declaration they submitted from Defendant Buehler, Chairman of Schneider Downs, stating that "corporate records reflect that the individuals [upon whose citizenship SDWM's citizenship depends] ... maintain permanent residences in the locations ... in the States of Pennsylvania and Ohio," is hearsay because Defendants did not include copies of the corporate records in their original Notice of Removal. Dkt. No. 1 4 ¶¶ 7, 9; Dkt. No. 7 at 3. Furthermore, Buehler did not state when the records were last updated, nor did he address the factors necessary to determine the domicile of each of the 34 individuals whose citizenships are determinative. *Id.* at 2 3. Instead, Buehler's declaration merely provided the city of residence of each individual, without any statement about the person's intent to remain there. *Id.* at 3. Fiduciary does not dispute that these deficiencies have since been cured in Defendants' Amended Notice of Removal, but instead raises a new argument that an inconsistency between the original Notice of Removal and Amended Notice of Removal requires remand. *See* Dkt. No. 24.

Shortly after Plaintiff filed its Motion to Remand, Defendants filed a timely Amended Notice of Removal.[3] In the Amended Notice of Removal, Defendants explain that SDWM is

a Pennsylvania limited partnership, and its partners are Schneider Downs Advisors II, LLC ("SDA II") and Schneider Downs Financial Advisors, LP ("SDFA").[4] SDA II is wholly owned by SDFA.[5] SDFA is a Pennsylvania limited partnership, with Schneider Downs Advisors, LLC ("SDA") as its general partner and 34 individuals as its limited partners, each of whom has been domiciled in Pennsylvania and Ohio since March 3, 2015, the date this suit was filed.[6] The members of SDA are 33 individuals who have also been domiciled in Pennsylvania and Ohio since March 3, 2015.[7] Accordingly, in their Response to the Motion to Remand, Defendants argue that the Amended Notice of Removal, and the declarations and evidence attached thereto, conclusively establish that SDWM is a citizen of Pennsylvania and Ohio, and that complete diversity exists in this case.[8]

[3]      Dkt. No. 22 ¶ 2. The Amended Notice of Removal was timely because it was filed within 30 days of the date on which each Defendant was served with Plaintiff's Original Petition and Citation. *See* 28 U.S.C. § 1446(b).

[4]      *Id.* ¶ 8 (citing Def. Ex. B ¶ 5 (Amended Decl. or Raymond W. Buehler, Jr.); Def. Ex. B 2.

[5]      Def. Ex. B ¶ 6; Def. Ex. B 3.

[6]      Dkt. No. 22 ¶¶ 8 10; Def. Ex. B ¶¶ 7 9, 12; Def. Ex. B 4, B 5. Defendants provided declarations from 27 of the 34 individuals listed as limited partners in SDFA and/or members of SDA, each of whom states facts that establish the domicile of each in Pennsylvania ("Pennsylvania Declarations"). Def. Ex. D E. The other seven individuals provided declarations that establish their domicile in Ohio ("Ohio Declarations"). Def. Ex. E.

[7]      Dkt. No. 22 ¶ 8 10; Def. Ex. B ¶¶ 8, 10 12; Def. Ex. B 6, B 7.

[8]      Dkt. No. 23 at 2.

In its Reply, Plaintiff argues that Defendants have presented contradictory evidence about the members of SDA because, with the original Notice of Removal, Defendant Buehler stated in his declaration that Nancy Skeans was one of 34 members of SDA; however, in the Amended Notice of Removal and Buehler's amended declaration, he states that there are only 33 members of SDA, and Nancy Skeans is not among them.[9] Fiduciary argues that this contradictory evidence shows Defendants have failed to meet their burden of establishing diversity jurisdiction.[10] Fiduciary

acknowledges that Skeans has provided a declaration in which she states that her permanent residence is in Pennsylvania, and that she intends to remain there, but Fiduciary argues that Skeans' declaration does not cure the unreliability of Defendants' filing.[11] Thus, Fiduciary argues that it has created an issue of fact that this Court should resolve in favor of remand. *Id.*

[9]      Dkt. No. 24 at 2 (citing Dkt. No. 1 4 ¶ 9; Def. Ex. B ¶ 11; Def. Ex. B 7).

[10]      Dkt. No. 24 at 2.

[11]      *Id.* at 3; Def. Ex. D (Dkt. No. 22 6 at 52 53) (Supp. Decl. of Nancy L. Skeans).

The issue is whether Defendants' Amended Notice of Removal, because it conflicts with, and not merely supplements, the original Notice of Removal, can create an issue of fact that requires remand, and if so, whether the issue of fact is of consequence to the subject matter jurisdiction inquiry. Defendants were not required to seek leave to file their Amended Notice of Removal. *Richardson v. United Steelworkers of Am.,* 864 F.2d 1162, 1165 (5th Cir.1989). An amended notice of removal is permitted to cure a defective or missing allegation regarding the citizenship of a party. *D.J. McDuffie, Inc. v. Old Reliable Fire Ins. Co.,* 608 F.2d 145, 146 (5th Cir.1979).

**\*4** Here, in their original Notice of Removal, Defendants did not adequately allege the citizenship of SDWM. Plaintiff does not argue that the Amended Notice of Removal contains similarly inadequate jurisdictional allegations. Rather, Plaintiff argues there is an issue of fact about the members of SDA, and specifically whether Nancy Skeans is a member. This is not a fact of consequence in determining the citizenship of SDWM because Plaintiff has not provided any allegation or competent evidence that shows Skeans or any other member of SDA is domiciled in Texas, so as to defeat diversity.

If Skeans is, indeed, a member of SDA, as Plaintiff speculates, the evidence before the Court establishes that she is domiciled in Pennsylvania, not Texas. Moreover, Plaintiff cannot create a fact issue based on differences between the original Notice of Removal and the Amended Notice of Removal. The latter supplants the former, and to create a fact issue, Plaintiff must provide competent evidence that contradicts the allegations and evidence in Defendants' Amended Notice of Removal. Plaintiff has not done so; therefore, the Court finds that

there is complete diversity between the parties, and Plaintiff's Motion to Remand is **DENIED**.

### PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY

**I. Legal Standard for Jurisdictional Discovery**
As the party opposing dismissal and requesting discovery, Plaintiff bears the burden of demonstrating the necessity of discovery. *See Davila v. United States, 713 F.3d 248, 264 (5th Cir.2013).* A district court has discretion to permit jurisdictional discovery. *Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 434 (5th Cir.2014).* However, a plaintiff has the burden to make a "preliminary showing of jurisdiction" before being entitled to such discovery.*Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 429 (5th Cir.2005).* The preliminary showing of jurisdiction must include factual allegations that show with reasonable particularity the possible existence of the necessary continuous and systematic contacts. *See Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 429 (5th Cir.2005)* (citing *Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir.2003)*).

A plaintiff should "identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction."*Evergreen Media Holdings, LLC v. Safran Co.,* No. CIV.A. H–14–1634, 2014 WL 7272292, at *3 (S.D.Tex. Dec.18, 2014)."[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted."*Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 855 (5th Cir.2000)* (citation omitted).

**II. Analysis of Motion for Jurisdictional Discovery**
The issue before the Court is whether Plaintiff has made a preliminary showing of jurisdiction, and if so, how Plaintiff's proposed Rule 30(b)(6) depositions would adduce facts that might support personal jurisdiction. Plaintiff's arguments are only directed to the issue of general jurisdiction. Therefore, Defendants argue that Plaintiff has failed to make a preliminary showing of general jurisdiction, and any facts adduced from further discovery will not alter this Court's jurisdictional analysis.

**A. Jurisdiction by Consent Through Registration**

*5 Plaintiff argues that this Court has personal jurisdiction over Schneider Downs based on its consent to jurisdiction in Texas, which was established when Schneider Downs filed with the Texas Secretary of State an Application for Registration of a Foreign Professional Corporation to do business in Texas, and designated a registered agent for service of process. Dkt. No. 18 at 3 (citing *Prejean v. Sonatrach, Inc., 652 F.2d 1260, 1270 n. 21 (5th Cir.1981); Acacia Pipeline Corp. v. Champlin Exploration, Inc., 769 S.W.2d 719, 720 (Tex.App.-Houston [1st Dist.] 1989, no writ)*). Plaintiff acknowledges that a more recent decision from the Fifth Circuit suggests that merely designating a registered agent does not establish the necessary contacts for general jurisdiction. *See Wenche Siemer v. Learjet Acquisition Corp., 966 F.2d 179, 183 (5th Cir.1992)* ("A registered agent, from any conceivable perspective, hardly amounts to the general business presence of a corporation so as to sustain an assertion of general jurisdiction.").

Nonetheless, Plaintiff argues that its theory of jurisdictional consent by way of designating a registered agent survives because in *Wenche Siemer* none of the parties were located in Texas, and the Fifth Circuit noted that no Texas court had yet held that registering to do business in Texas serves as a corporation's consent to general jurisdiction where the plaintiffs are non-residents and the defendant is not conducting substantial activity within Texas. *Id.*

Plaintiff asks this Court to infer that the Fifth Circuit, at the time *Wenche Siemer* was decided, was aware of *Acacia Pipeline,* where a state appellate court held that a foreign corporation's designation of a Texas registered agent constituted consent to be sued in Texas by a plaintiff located in Texas. *See Acacia Pipeline Corp., 769 S.W.2d at 720.* Plaintiff argues that the Fifth Circuit's decisions in *Prejean* and *Wenche Siemer,* along with the decision in *Acacia Pipeline,* should be read as establishing that registration to do business in Texas operates as a consent to jurisdiction, at least when a Texas resident sues a Texas-chartered foreign corporation. Dkt. No. 18 at 5. Plaintiff acknowledges that another court within the Northern District of Texas has differed with respect to Plaintiff's reading of *Wenche Siemer. See Dominion Gas Ventures, Inc. v. N.L.S., Inc., 889 F.Supp. 265, 268 (N.D.Tex.1995)* ("The mere act of registering an agent does not create a general business presence in Texas, nor does it act as consent to being hauled into a Texas court."(citing *Wenche Siemer, 966 F.2d at 181*)).

Defendants argue that *Wenche Siemer* establishes the Fifth Circuit's position that qualifying to do business in a forum is not afforded any special weight in a general jurisdiction analysis, and that if Plaintiff's reading of *Prejean* were correct, jurisdictional discovery would be unnecessary. Dkt. No. 25 at 3. Defendants further argue that recent courts of appeal decisions have concluded that *Acacia Pipeline* was wrongly decided. *Id.* (citing *Waterman Steamship Corp. v. Ruiz,* 355 S.W.3d 387, 410 (Tex.App.-Houston [1st Dist.] 2001, pet. denied); *Conner v. ContiCarriers & Terminals Inc.,* 944 S.W.2d 405, 416 (Tex.App.-Houston [14th Dist.] 1997, no pet.); *see also* Dkt. No. 25 at n. 3 (citing Texas court of appeals decisions holding that registration to do business in Texas and/or having a registered an agent in Texas does not establish general jurisdiction).

*6 Defendants reject Plaintiff's attempt to distinguish *Wenche Siemer* as involving a non-resident plaintiff, noting that the general jurisdiction analysis focuses exclusively on a defendant's contacts with the forum. *See Johnston v. Multidata Sys. Int'l Corp. .,* 523 F.3d 602, 609 (5th Cir.2008). Defendants rely on *Wenche Siemer* to argue that Schneider Downs' registration to do business in Texas is of no import to the general jurisdictional analysis, and that no amount of jurisdictional discovery can change that proposition. *See Wenche Siemer,* 966 F.2d at 182; *see also CitiCapital Commercial Corp. v. First Nat'l Bank,* No. 3:04–CV–0302–B, 2005 U.S. Dist. LEXIS 6310, at *7, 2005 WL 856886 (N.D.Tex. Apr. 11, 2005); *Leonard v. USA Petroleum Corp.,* 829 F.Supp. 882, 891 (S.D.Tex.1993).

The Court finds that the registration of an agent for process and registration to do business in Texas, without more, does not suffice to establish general jurisdiction. *See Wenche Siemer,* 966 F.2d at 182; *Johnston, 523 F.3d at 614.* Even if that proposition were viable, no jurisdictional discovery would be needed to prove general jurisdiction. The question is whether Plaintiff has made a preliminary showing of something else that, if proven through jurisdictional discovery, would establish general jurisdiction over Schneider Downs.

**B. Jurisdiction by Registration Plus Contacts**
Alternatively, Plaintiff argues that Schneider Downs' registration with the Texas Secretary of State *and* its Texas contacts give rise to general jurisdiction in Texas.

Plaintiff relies on *Leonard v. USA Petroleum Corp.,* in which the court acknowledged that a foreign corporation's

registration with the Texas Secretary of State was a factor in a jurisdictional analysis, but found that more was necessary to establish purposeful availment of the protections of Texas. 829 F.Supp. 882 (S.D.Tex.1993). Plaintiff refers to this holding as establishing the "registration plus" theory of personal jurisdiction, *i.e.,* consent *and* contacts. Dkt. No. 29 at 2–3.

The Court finds that *Leonard* does not establish the proposition suggested by Plaintiff. In effect, Plaintiff asks this Court to give Schneider Downs' registration with Texas undue weight in the general jurisdictional analysis when the Fifth Circuit has made it clear that the appointment of an agent for service of process and the application to do business are afforded no special weight, and the exercise of general jurisdiction must comport with the usual principles of due process. *See Wenche Siemer,* 966 F.2d at 183. In *Ratliff v. Cooper Laboratories, Inc.,* which was favorably discussed by the Fifth Circuit in *Wenche Siemer,* the Fourth Circuit held that registration to do business and the appointment of a registered agent were afforded no special weight where a non-resident defendant had no offices, warehouses, real or personal property, bank accounts, or advertisements in the state. 444 F.2d 745, 748 (4th Cir.1971). The *Ratliff* court held personal jurisdiction was not established over a non-resident defendant despite the fact that five men who lived in the State promoted the defendant's products through personal contacts with doctors and drugstores located throughout the state. *Id.* at 746.

*7 The Court concludes that Plaintiff's "registration plus" theory is just a theory, and Plaintiff must establish general jurisdiction under the usual due process analysis. *See Goodyear Dunlop Tires Operations v. Brown,* ––– U.S. ––––, ––––, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011); *Daimler AG v. Bauman,* ––– U.S. ––––, ––––, 134 S.Ct. 746, 760, 187 L.Ed.2d 624 (2014); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–19, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

For a corporation, the place in which the corporation is "fairly regarded at home," *i.e.* its place of incorporation and/or its principal place of business" is considered the archetypical forum for general jurisdiction. *Goodyear,* 131 S.Ct. at 2851; *Daimler AG,* 134 S.Ct. at 760. "A corporation's continuous activity of some sorts within a state ... is not enough to support the demand that the corporation be amenable to suits unrelated to that activity."*Goodyear,* 131 S.Ct. at 2856 (quoting *International Shoe Co. v. Washington,* 326 U.S.

310, 318, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The question is whether a corporation's affiliations with the forum "are so 'continuous and systematic' as to render [the corporation] essentially at home in the forum State.' " *Daimler AG,* 134 S.Ct. at 761.

Although Defendants ask this Court to begin with the proposition that general jurisdiction is not easily established, here, Plaintiff need only make a preliminary showing of jurisdiction by alleging facts with reasonable particularity that show Schneider Downs has the necessary systematic and continuous affiliations with Texas that would support general jurisdiction. Defendant Buehler has admitted that Schneider Downs has performed "isolated" work for Texas clients for the last six years that averaged less than 1% of Schneider Downs' annual revenue. *See* Dkt. No. 6–1 ¶ 13. However, Plaintiff is seeking to discover the actual revenue Schneider Downs receives from Texas, rather than the six year average revenue. Dkt. No. 18 at 9. Plaintiff is also seeking more information about Schneider Downs' efforts to expand its business in Texas, particularly through its website. *See* Dkt. No. 19 (Pl.App.6–9). Plaintiff submits that these inquiries will lead to facts that support general jurisdiction. Dkt. No. 6–1 at 7.

Defendants respond that even if Schneider Downs derives a substantial portion of its revenues from business in Texas, those revenues must be derived from activities by Schneider Downs in Texas. *See Johnston,* 523 F.3d at 611; *Cyper v. Broussard Bros., Inc .,* No. 3:13–CV–00050, 2013 U.S. Dist. LEXIS 96061, at *6–7 (S.D.Tex. July 9, 2013); *see also* Dkt. No. 25 at 7 n. 6. Thus, Defendants contend that regardless of the revenues Schneider Downs derives from Texas clients, it is an insubstantial amount of its business that is performed in Texas. *Id.* at 7.

Further, in response to Plaintiff's critique of Defendant Buehler's vague declaration regarding Schneider Downs' business in Texas, Defendants have submitted Buehler's Supplemental Declaration, which states that Schneider Downs' annual revenues over the past six years from work performed in Texas have averaged approximately 0.15% of Schneider Downs' overall annual revenues. Supp. Decl. of Raymond W. Buehler ¶¶ 4–8, Dkt. No. 26 (Def.App.2–3); *id.* at Ex. 1 (showing 0.13% average annual revenues over past seven years) (Def.App.7). Moreover, the average hours worked in Texas by Schneider Downs employees accounted on average for only 0.08% of hours firm-wide over the past seven years. *Id.* Consequently, Defendants argue that further

discovery on revenue and hours is unwarranted. Dkt. No. 25 at 8.

***8** Defendants also argue that Schneider Downs' website posting on the Texas business margin tax does not support a finding of general jurisdiction because it was the only one of 300 postings since January 2012 that addressed a specific Texas tax issue. Supp. Decl. of Raymond W. Buehler ¶ 10, Dkt. No. 26, Def.App. 3. Moreover, Defendants contend that Schneider Downs offers tax advice to clients in all fifty states, and as part of that service, it periodically posts updates on recent tax issues in different states and countries. *Id.* Defendants also contest Plaintiff's assertion that the website is interactive because it provides an e-mail hyperlink. *See McFadin v. Gerber,* 587 F.3d 753, 762 (5th Cir.2009); *Mink v. AAA Dev. LLC,* 190 F.3d 333, 335 (5th Cir.1999). Defendants characterize the website as passive. *Id.* Alternatively, Defendants argue that an interactive website only shows that a firm is doing business with Texas, not necessarily in Texas. *See Monkton Ins. Servs. v. Ritter,* 768 F.3d 429, 432 (5th Cir.2014). Defendants state that Schneider downs does not advertise or solicit clients in Texas. Supp. Decl. of Raymond W. Buehler ¶ 10, Dkt. No. 26, Def.App. 3.

The Court has reviewed the declarations submitted by Defendants, and finds that the declarations create a very narrow path for Plaintiff to establish general jurisdiction. Whether Plaintiff can navigate that path is uncertain, but this has only an indirect bearing on the propriety of jurisdictional discovery. Personal jurisdiction is not reducible to a mathematical formula by which a certain amount of revenue and hours spent in a particular state foreclose or establish general jurisdiction as a matter of law; rather, "the issue of whether personal jurisdiction can be constitutionally exercised over a defendant" requires courts to look to the "nature and quality of commercial activity" that an entity conducts, through both traditional means and over the Internet. *Mink,* 190 F.3d at 336; *see also Helicopteros,* 466 U.S. at 415–16.

Plaintiff has made a preliminary showing regarding the nature and quality of Schneider Downs' commercial activity in Texas, so the Court will permit Plaintiff to conduct a Rule 30(b)(6) deposition limited to the quality and nature of Schneider Downs' contacts with Texas, including, but not limited to, the type of work it performs for Texas clients, whether that work is performed in Texas or elsewhere, and the role Schneider Downs' website plays in its relationship with its Texas customers.

**C. Alter Ego Theory of Personal Jurisdiction over SDWM**

Federal courts acknowledge "it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."*Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir.2002). The rationale for exercising jurisdiction is that "the parent corporation exerts such domination and control over its subsidiary 'that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction.' " *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex.2002) (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir.1983)). Texas law presumes that two separate corporations are distinct entities. *Id.* (quoting *Bell Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336, 339 (Tex.1968)). "To 'fuse' the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary." *Id.* at 799. However, "the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *Id.* (citing *Hargrave*, 710 F.2d at 1160).

**\*9** The Court must weigh certain factors to determine whether Schneider Downs controls the internal business operations and affairs of SDWM to a degree greater than that normally associated with common ownership and directorship, *i.e.,* to overcome the presumption of corporate separateness: "(1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities."*Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 346 (5th Cir.2004).

Plaintiff contends that it has made a preliminary showing of jurisdiction over SDWM under an alter-ego theory, *i.e.,* SDWM's relationship with Schneider Downs makes it such that the establishment of personal jurisdiction over the latter gives the Court jurisdiction over the former. Dkt.

No. 18 at 7 (citing *Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 422–23 (5th Cir.2014). Plaintiff argues that the declarations submitted by Schneider Downs' Chairman, Defendant Buehler, and SDWM's Managing Director of the Financial Services Group, Nancy Skean, show (1) the shareholders of Schneider Downs established SDWM; and (2) the partners and members of SDWM subsidiaries, Schneider Downs Financial Advisors, LP and Schneider Downs Advisors, LLC are the same and include Defendant Buehler. *See* Pl.App. 30 ¶¶ 3, 8; Dkt. No. 1–4 at Ex. B–5, B–7. Plaintiff thus seeks to discover the management, leadership, policies and profit sharing of Schneider Downs and SDWM.

Plaintiff acknowledges Nancy Skean's declaration that SDWM makes its own hiring and employment decisions, and Buehler's similar claim that Schneider Downs does not take an active part in SDWM's business operations. Dkt. No. 1–4 ¶ 8; Dkt. No. 6–1 ¶ 15. However, Plaintiff notes that Buehler assisted in negotiating Eichelberger's employment with SDWM, which is at the core of this suit. Dkt. No. 6–1 ¶ 18. Indeed, Buehler sent a letter on SDWM letterhead informing Gibson of SDWM's recruitment of Eichelberger and SDWM's preemptive actions to restrict Eichelberger's employment. Dkt. No. 6–2 (Pl.App.69–72). Accordingly, Plaintiff seeks to discover facts about whether the finances of SDWM and Schneider Downs are distinct, the separateness of their operations and management, whether they file separate tax returns, their respective ownership, any shared employees, officers, and directors, the separateness of books and accounts, the policymaking process, and the separateness of business governance meetings. Dkt. No. 18 at 9.

Defendants respond that Plaintiff cannot allege enough facts to support even an inference that SDWM would be subject to jurisdiction in Texas under an alter ego theory. First, Defendants note that Plaintiff is seeking to establish personal jurisdiction over the controlled company, rather than the controlling company, and Plaintiff has provided no authority by which the alter ego doctrine was applied to impute business presence in Texas of a controlling entity to a related, controlled entity that lacked Texas contacts. [12] Dkt. No. 25 at 11. Even if this were permissible, Defendants argue, the mere overlap between shareholders of Schneider Downs and partners of SDWM does not show the relationship between the entities. Schneider Downs has no ownership interest in SDWM and is not its direct or indirect parent. Buehler Supp. Dec. ¶ 15, Dkt. No. 6–1; Skeans Decl. ¶ 8.

12  Plaintiff counters that *PHC Minden, L.P. v. Kimberly Clark Corp.,* cited by Defendants, discusses this very concept that Defendants find novel and unsupported — alter ego jurisdiction over a subsidiary based on the contacts of the parent. 235 S.W.3d 163, 175 76 (Tex.2007). In that case, the Supreme Court of Texas held that the court of appeals erred by imputing the parent's contacts to the subsidiary because it found the parent and subsidiary were not a "single business enterprise." *Id.* at 175 76. The U.S. Supreme Court has implicitly sanctioned imputing contacts from a parent to a subsidiary. *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (explaining that "jurisdiction over a parent corporation [does not] automatically establish jurisdiction over a wholly owned subsidiary").

**\*10**  Defendants contend that the declarations of Buehler and Skeans clearly establish that Schneider Downs does not exercise dominion and control over SDWM. *See* Dkt. No. 25 at 12–13. As for the letter Defendant Buehler sent on behalf of SDWM to Gibson, Defendants contend that was a unique circumstance prompted by Buehler's familiarity with Roger Gibson, and he declares he does not ordinarily take part in SDWM's recruitment and hiring decisions. Supp. Buehler Decl. ¶¶ 19–20; Supp. Skeans Decl. ¶ 13 (Def.App.5, 10). Buehler contends that nobody at Schneider Downs, including himself, took part in the decision to hire Eichelberger. Supp. Buehler Decl. ¶ 21; Supp. Skeans Decl. ¶ 13 (Def.App.5, 10).

Plaintiff points out the inconsistencies in Buehler's and Skeans' various declarations. *Compare* Supp. Buehler Decl. ¶ 15 (Def.App.4) ("Schneider Downs maintains its own financial records, separate and apart from those of [SDWM].") *and* Supp. Skeans Decl. ¶ 4 (Def.App.8) ("[SDWM] maintains its own books and records related to all partnership affairs, separate and apart from the corporate records of Schneider Downs") *with* Buehler Decl. ¶ 3, Dkt. No. 22–4 ("As Chairman of Schneider Downs, I am a custodian of the corporate records of Schneider Downs and its related entities, including but not limited to [SDWM], SDFA, SDA, and SDA II" and those records are "kept in the regular course of business at Schneider Downs."). Plaintiff also notes that Skeans stated that two SDWM partners, Don Linzer and Karl Kunkle, are actively involved in the management of

SDWM, and both appear to be shareholders of Schneider Downs. Dkt. No. 26 (Pl.App.9); Dkt. No. 30 (Pl.App.10–15).

The Court is satisfied that the factor-based test for alter ego jurisdiction is, in its very nature, a fact-intensive inquiry, requiring this Court to carefully weigh the various areas of overlap between the disputed entities. The Court is not satisfied that the foregoing declarations of Buehler and Skeans conclusively foreclose an alter ego theory, should Plaintiff establish that this Court has general jurisdiction over Schneider Downs. Plaintiff has made a preliminary showing of overlap between the entities, and there is at least a fact issue with respect to Buehler's actions on SDWM's behalf. Accordingly, this Court will permit Plaintiff to conduct a Rule 30(b)(6) deposition limited to the issue raised in Nos. 1–10 of page 9 of Plaintiff's Motion for Jurisdictional Discovery.

## CONCLUSION

Plaintiff's Motion to Remand is **DENIED,** and Plaintiff's Motion for Jurisdictional Discovery is **GRANTED** to the extent discussed herein.

Defendants requests that the corporate representative depositions sought by Plaintiff be restricted to the jurisdictional issues raised and that they be limited to one hour each. Dkt. No. 25 at 15. The Court finds these restrictions are reasonable, and **ORDERS** that the Rule 30(b)(6) depositions of SDWM and Schneider Downs be no more than one hour each and limited to the jurisdictional issues raised in the parties' briefing and this Memorandum Opinion and Order.

**\*11**  Plaintiff shall promptly notify the Court upon completion of the depositions, after which Plaintiff will have 14 days to respond to Defendants' Amended Motion to Dismiss for Lack of Personal Jurisdiction and Alternative Motion to Transfer Venue [Dkt. No. 27].

**SO ORDERED.**

**All Citations**

Slip Copy, 2015 WL 2165953

---

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Attachment B

2015 WL 3999488
Only the Westlaw citation is currently available.
United States District Court,
E.D. Missouri,
Eastern Division.

Jennifer KEELEY and Jess Keeley, Plaintiffs,
v.
PFIZER INC., Defendant.

No. 4:15CV00583 ERW. | Signed
June 1, 2015. | Filed July 1, 2015.

**Attorneys and Law Firms**

Jeffrey J. Lowe, Sarah Shoemake Doles, Carey and Danis,
Clayton, MO, for Plaintiff.

Mark C. Hegarty, Shook and Hardy, LLP, Kansas City, MO,
for Defendant.

*MEMORANDUM AND ORDER*

E. RICHARD WEBBER, Senior District Judge.

**\*1** This matter comes before the Court on Defendant Pfizer
Inc.'s Motion to Dismiss [ECF No. 5].

**I. BACKGROUND**

Plaintiffs Jennifer Keeley ("Plaintiff Jennifer") and Jess
Keeley ("Plaintiff Jess") initiated this lawsuit by filing a
Petition in in the Circuit Court of St. Louis City on March 23,
2015. On April 6, 2015, Defendant Pfizer Inc. ("Defendant")
removed the Petition to this Court pursuant to 28 U.S.C.
§§ 1332 and 1441. On May 6, 2015, Defendant filed its
pending Motion to Dismiss [ECF No. 5], for lack of personal
jurisdiction. For purposes of this Motion to Dismiss, the
Court accepts as true the following facts alleged in Plaintiff's
Petition. *Great Rivers Habitat Alliance v. Fed. Emergency
Mgmt. Agency*, 615 F.3d 958, 988 (8th Cir.2010).

Plaintiff Jennifer is Plaintiff Jess's natural mother [ECF
No. 8]. Plaintiff Jess was born on March 23, 1995, in
Columbus, Georgia. While Plaintiff Jennifer was pregnant
with Plaintiff Jess, she took the prescription drug Zoloft®.
Defendant is incorporated in Delaware with its principal
place of business in New York. During the relevant

time period, Defendant advertised, analyzed, assembled,
compounded, designed, developed, distributed, formulated,
inspected, labeled, manufactured, marketed, packaged,
produced, promoted, processed, researched, tested, and sold
Zoloft® in Georgia, Missouri, Pennsylvania, and throughout
the United States. Defendant marketed, promoted, and sold
Zoloft® throughout the United States, including St. Louis,
Missouri.

Plaintiffs allege Plaintiff Jess was born with birth defects
caused by Plaintiff Jennifer's ingestion of Zoloft® during
pregnancy. Plaintiffs assert four counts against Defendant:
Strict Products Liability, Defective Design (Count I),
Strict Products Liability, Failure to Warn (Count II),
Negligence (Count III), and Fraudulent Misrepresentation
and Concealment (Count IV). Defendant now seeks to
dismiss Plaintiffs' claims for lack of personal jurisdiction.

**II. STANDARD**

"A federal court may exercise jurisdiction over a foreign
defendant only to the extent permitted by the forum state's
long-arm statute and by the Due Process Clause of the
Constitution."*Miller v. Nippon Carbon Co.,* 528 F.3d 1087,
1090 (8th Cir.2008) (internal quotations and citation omitted).
Because the Missouri long-arm statute is construed as
extending personal jurisdiction to the fullest extent permitted
by the Fourteenth Amendment's Due Process Clause, *see
J.C.W. ex rel. Webb v. Wyciskalla,* 275 S.W.3d 249, 253
(Mo.2009), the Court's jurisdictional inquiry is limited to
determining whether asserting personal jurisdiction over the
defendant comports with due process.

Where personal jurisdiction is controverted, the party
asserting jurisdiction bears the burden of establishing a
prima facie case that jurisdiction exists.*Johnson v. Woodcock,*
444 F.3d 953, 955 (8th Cir.2006). Thus, "[t]o survive a
motion to dismiss, the plaintiff must state sufficient facts
in the complaint to support a reasonable inference that
[the defendant] may be subjected to jurisdiction in the
forum state."*Steinbuch v. Cutler,* 518 F.3d 580, 585 (8th
Cir.2008) (internal citation omitted)."The plaintiff's 'prima
facie showing' must be tested, not by the pleadings alone,
but by the affidavits and exhibits presented with the motions
and opposition thereto."*Dever v. Hentzen Coatings, Inc.,* 380
F.3d 1070, 1072–73 (8th Cir.2004) (internal quotations and
citation omitted).

**III. DISCUSSION**

**\*2** Personal jurisdiction can be general or specific. *Daimler AG v. Bauman,* 134 S.Ct. 746, 754 (2014). Specific jurisdiction refers to jurisdiction which "arises out of or relates to the defendant's contacts with the forum."*Id.* (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414, n. 8 (1984) (internal quotations omitted). A court may assert general jurisdiction to hear "any and all claims against [a defendant] when their affiliations with the state are so continuous and systematic as to render them essentially at home in the forum State."*Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846, 2851 (2011) (internal quotations omitted). Defendant asserts the Court lacks both general and specific jurisdiction.

### A. General Jurisdiction

The Supreme Court has limited general jurisdiction for a corporation to its place of incorporation or principal place of business except in an "exceptional case." *Daimler,* 134 S.Ct. at 761, n. 19. In *Daimler,* Plaintiffs were Argentinian residents who brought suit in the United States District Court for the Northern District of California against a German corporation regarding actions of its Argentinian subsidiary in Argentina. *Id.* at 750–751. Plaintiffs claimed the District Court had jurisdiction over the lawsuit because of the California contacts of Mercedes–Benz USA, LLC, a subsidiary of the Defendant incorporated in Delaware with its principal place of business in New Jersey. *Id.* This subsidiary distributed vehicles to dealerships throughout the United States, including California. *Id.* The Court held Daimler is not "at home" in California and cannot be sued there for injuries attributable to conduct in Argentina. *Id.* Applying this holding, Plaintiffs have not alleged sufficient facts to establish general jurisdiction over Defendant.

Defendant is incorporated in Delaware and has a principal place of business in New York. Defendant is not incorporated in Missouri nor is its principal place of business here; thus, Plaintiff's only other option is to establish this is an exceptional case and they have not done so. The extent of Plaintiffs' allegations is Defendant marketed and sold Zoloft® in Missouri. These facts are much less than those alleged in *Daimler* and as the Supreme Court did not find personal jurisdiction in *Daimler,* it cannot be found here. Simply marketing and selling a product in a state does not make a defendant's affiliations with the state so "continuous and systematic as to render them essentially at home in the forum state."*Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846, 2851 (2011).

Plaintiff cites to *Keeton v. Hustler Magazine, Inc.* [1] to support the proposition jurisdiction may be based on a defendant's continuous but limited general business in a state. However, in *Keeton,* the Supreme Court found specific jurisdiction over the defendant; it was not discussing general jurisdiction. 465 U.S. at 775–781 (discussion of minimum contacts between the defendant and forum state). The sale of products into the forum state may be germane to specific jurisdiction, but it does not create general jurisdiction. *Goodyear,* 131 S.Ct. at 2855. Plaintiffs have not established general jurisdiction over Defendant.

[1]  465 U.S. 770 (1984).

### B. Specific Jurisdiction

**\*3** Defendant also asserts Plaintiffs have not established specific jurisdiction. Specific jurisdiction focuses on "the relationship among the defendant, the forum, and the litigation."*Walkden v. Fiore,* 134 S.Ct. 1115, 1121 (2014) (citing *Keeton,* 465 U.S. at 775)."The defendant's suit-related conduct must create a substantial connection with the forum State."*Id.* The focus is on the contacts a defendant creates with the state, not connections to a plaintiff or other third-parties who reside in the state. *Id .* at 1122. Specific jurisdiction can be found where a corporation's activities are continuous and systematic and give rise to the liabilities in the suit.*Daimler,* 134 S.Ct. at 761 (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 317 (1945). The Eighth Circuit has identified five factors to establish a substantial connection with the forum state: (1) nature and quality of the contacts with the forum state, (2) quantity of the contacts, (3) relation of the cause of action to those contacts, (4) interest of the forum state in providing a forum for its residents, and (5) convenience of the parties. *Johnson v. Woodcock,* 444 F.3d 953, 956 (8th Cir.2006) (citing *Porter v. Berall,* 293 F.3d 1073, 1076 (8th Cir.2002)).

Plaintiffs do not allege any facts regarding the quality of the contacts with Missouri, the quantity of those contacts, or the relation of the cause of action to those contacts. Plaintiffs conclusively state Defendant made a contract or promise substantially connected with/or within Missouri, committed and conspired to commit tortious acts in Missouri, and owned, used, or possessed real estate in Missouri [ECF No. 8, ¶ 7]. Plaintiffs restated the Missouri long-arm statute but did not provide any facts to support these conclusions. *See*Mo.Rev.Stat. § 506.500. Simply stating Defendant marketed, promoted, and sold Zoloft® in Missouri does not establish specific jurisdiction.

From the facts Plaintiff does allege, it is unclear how Defendant's contacts with Missouri relate to the cause of action in this suit. Plaintiff Jess was born in Georgia. There are no facts suggesting Plaintiff was prescribed the medication in Missouri, purchased the medication in Missouri, saw the advertisements in Missouri, or in any way was injured in Missouri. The inquiry into specific jurisdiction does not focus on Plaintiff's contacts with the forum state, but Plaintiff's injury must be connected to Defendant's contacts with the forum state. *Walden,* 134 S.Ct. at 1123. In *Keeton,* even though Plaintiff had little contact with New Hampshire, the Plaintiff suffered damages there. 465 U.S. at 776. Plaintiff's injuries in New Hampshire, along with Defendant's contacts with the state which caused the injury, formed the basis of specific jurisdiction. *Id.* That simply is not the case here. Plaintiffs have not alleged any facts to support a finding of specific jurisdiction. Under Plaintiffs' theory of jurisdiction, a national company could be sued by any resident of any state in any state. This does not comport with "traditional notions of fair play and substantial justice" as required by the Constitution.*Daimler,* 134 S.Ct. at 754 (citations omitted).

### C. Consent to Personal Jurisdiction

**\*4** Plaintiffs contend Defendant has consented to jurisdiction in Missouri because Defendant is registered to do business in Missouri and has a registered agent in Missouri. Every foreign corporation is required to register with the Secretary of State and maintain a registered agent in the state to transact business in Missouri. Mo.Rev.Stat. §§ 351.572, 351.586 (2014). Many states have enacted similar statutes and national corporations are often registered in to do business in several states. If following these statutes creates jurisdiction, national companies would be subject to suit all over the country. This result is contrary to the holding in *Daimler* that merely doing business in a state is not enough to establish general jurisdiction.*Daimler,* 134 S.Ct. at 761–62.

The Supreme Court found "[s]uch exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."*Id.* (internal quotations omitted). A defendant's consent to jurisdiction must satisfy the standards of due process and finding a defendant consents to jurisdiction by registering to do business in a state or maintaining a registered agent does not. [2] Thus, Defendant did not consent to jurisdiction.

[2] Plaintiffs cite to *Knowlton v. Allied Van Lines, Inc.* which held a defendant consented to jurisdiction by designating an agent for service of process within the state. 900 F.2d 1196 (8th Cir.1990). In *Knowlton,* the Eighth Circuit was analyzing a Minnesota statute which required a foreign corporation to be subject service of process by service on a registered agent in the state. *Id.* at 1199. In contrast, the Missouri statutes requiring registration with the state and the maintenance of a registered agent do not mention service of process at all.Mo.Rev.Stat. §§ 351.572, 351.586. This distinction, along with the holding in *Daimler,* requires this Court to reject the proposition Defendants have consented to jurisdiction by registering with the State of Missouri and maintaining a registered agent within the state.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Pfizer Inc.'s Motion to Dismiss [ECF No. 5] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs Jennifer Keeley and Jess Keeley's claims against Defendant Pfizer, Inc. shall be **DISMISSED, without prejudice.**

### All Citations

Slip Copy, 2015 WL 3999488

---

**End of Document**  © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Attachment C

**2015 WL 4622028**
Only the Westlaw citation is currently available.
United States District Court,
M.D. North Carolina.

PUBLIC IMPACT, LLC, Plaintiff,
v.
BOSTON CONSULTING GROUP, INC., Defendant.

No. 15–cv–464.  |  Signed Aug. 3, 2015.

**Synopsis**
**Background:** Education policy and management consulting firm brought action against competitor, alleging that competitor's use of its trademark on competitor's website and in internet activity, constituted infringement in violation of the Lanham Act. Firm moved for preliminary injunction and temporary restraining order, and competitor moved to dismiss for lack of personal jurisdiction.

**Holdings:** The District Court, Thomas D. Schroeder, J., held that:

[1] competitor's mere registration to do business in North Carolina did not confer general jurisdiction;

[2] contacts with North Carolina were insufficient for specific personal jurisdiction; and

[3] firm established good cause to seal documents.

Ordered accordingly.

West Headnotes (18)

[1]    **Constitutional Law**
         👉 Non-residents in general
    Under the Due Process Clause, personal jurisdiction over a nonresident defendant may be either general or specific. U.S.C.A. Const.Amend. 14.

    Cases that cite this headnote

[2]    **Constitutional Law**
         👉 Business, business organizations, and corporations in general
    **Trademarks**
         👉 Personal jurisdiction in general
    Foreign corporation's mere compliance with North Carolina's registration statute, which was mandatory for doing business within the state, was not sufficient to confer general jurisdiction within the meaning of due process in trademark infringement action; since nothing in statute's language expressly extended personal jurisdiction over registering businesses, fact that corporation did nothing more than register to do business in North Carolina and appoint an agent precluded state from exercising jurisdiction. U.S.C.A. Const.Amend. 14; West's N.C.G.S.A. § 1–75.4(1)(d).

    Cases that cite this headnote

[3]    **Federal Courts**
         👉 Related contacts and activities; specific jurisdiction
    Specific jurisdiction requires that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state.

    Cases that cite this headnote

[4]    **Federal Courts**
         👉 Related contacts and activities; specific jurisdiction
    A court may exercise specific jurisdiction when the cause of action arises out of the defendant's contacts with the forum.

    Cases that cite this headnote

[5]    **Federal Courts**
         👉 Related contacts and activities; specific jurisdiction
    The determination of whether specific jurisdiction is appropriate depends on the facts and circumstances of each case.

Cases that cite this headnote

**[6]    Federal Courts**
  👈 Related contacts and activities; specific jurisdiction

Extension of specific jurisdiction requires consideration of three factors, each of which must be satisfied: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable.

Cases that cite this headnote

**[7]    Federal Courts**
  👈 Purpose, intent, and foreseeability; purposeful availment

The purposeful availment requirement for specific jurisdiction ensures that a nonresident defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts; rather, a defendant's conduct and connection to the forum must be such that it should reasonably anticipate being haled into court there.

Cases that cite this headnote

**[8]    Constitutional Law**
  👈 Non-residents in general

If a defendant has created a substantial connection to the forum, then it has purposefully availed itself of the privilege of conducting business there, as required for forum's exercise of specific personal jurisdiction comporting with due process requirements. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

**[9]    Federal Courts**
  👈 Related contacts and activities; specific jurisdiction

Connection to the forum, for purposes of establishing a court's specific personal jurisdiction over a nonresident defendant, must arise out of contacts that the defendant himself creates with the forum State.

Cases that cite this headnote

**[10]    Federal Courts**
  👈 Purpose, intent, and foreseeability; purposeful availment
**Federal Courts**
  👈 Related contacts and activities; specific jurisdiction

Purposeful availment inquiry, for determining whether a court has specific jurisdiction over a nonresident defendant, is flexible and includes an evaluation of several factors including: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum.

Cases that cite this headnote

**[11]    Constitutional Law**
  👈 Services and service providers
**Trademarks**
  👈 Internet use; cybersquatting

Foreign corporation, a private global management consulting firm, lacked sufficient contacts with North Carolina to support exercise of specific personal jurisdiction comporting with due process in trademark infringement action brought by owner of "PUBLIC IMPACT" mark

against corporation for use of owner's mark on the internet; corporation's contacts with North Carolina were unrelated to infringement claim, and corporation's internet use of mark was passive, since it did not engage in any online exchanges with North Carolina residents, but rather directed its minimally interactive website at a global audience instead of specifically towards any North Carolina residents or the state itself. U.S.C.A. Const.Amend. 14, ; West's N.C.G.S.A. § 1–75.4(1)(d).

Cases that cite this headnote

**[12]** **Federal Courts**
 Related contacts and activities; specific jurisdiction

Specific jurisdiction must rest on the litigation-specific conduct of the defendant in the proposed forum state.

Cases that cite this headnote

**[13]** **Federal Courts**
 Pleadings and motions

A plaintiff cannot establish personal jurisdiction by relying solely on the basis of its own conclusory, speculative assertions.

Cases that cite this headnote

**[14]** **Records**
 Court records

Consulting firm established good cause for court to seal its unredacted brief filed in support of its motion for preliminary injunction and temporary restraining order in trademark infringement action against competitor; motion to seal was pending for more than a month without any objection raised by competitor, and no less drastic alternative existed due to negative effect on firm's business that would result from public release of proprietary financial information contained in the brief.

Cases that cite this headnote

**[15]** **Records**

**[15]**
 Court records

Although the public enjoys a right to access documents filed in connection with a dispositive motion in a civil case, the court has discretion to seal documents when the public's right of access is outweighed by competing interests.

Cases that cite this headnote

**[16]** **Records**
 Court records

Before sealing documents, a district court must do the following: (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives.

Cases that cite this headnote

**[17]** **Records**
 Court records

Burden of establishing good cause to seal documents falls on the party seeking to keep the information sealed.

Cases that cite this headnote

**[18]** **Trademarks**
 Alphabetical listing
PUBLIC IMPACT.

Cases that cite this headnote

**Attorneys and Law Firms**

Matthew S. Deantonio, Corby Cochran Anderson, Nexsen Pruet, PLLC, Charlotte, NC, for Plaintiff.

John M. Nading, DLA Piper LLP, Washington, DC, Alice Carmichael Richey, Parker Poe Adams & Bernstein LLP, Charlotte, NC, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

THOMAS D. SCHROEDER, District Judge.

**\*1** This is a trademark infringement case brought by Plaintiff Public Impact, LLC ("Public Impact"), against Boston Consulting Group, Inc. ("BCG"). Before the court are three motions: (1) Public Impact's motion for temporary restraining order and preliminary injunction (Doc. 6); (2) Public Impact's motion to seal (Doc. 11); and (3) BCG's motion to dismiss for lack of personal jurisdiction and, alternatively, to transfer venue (Doc. 20). For the reasons set forth below, Public Impact's motion to seal and BCG's motion to dismiss for lack of personal jurisdiction will be granted; Public Impact's motion for injunctive relief will therefore be denied without prejudice as moot.

## I. BACKGROUND

The allegations of the complaint and supporting affidavits show the following: [1]

Public Impact is an education policy and management consulting firm, located in Carrboro, North Carolina. (Doc. 8 ¶¶ 3, 7.) Its clients include private foundations, government agencies, nonprofits, and education policy leaders. (*Id.* ¶ 13.) Public Impact owns a federally registered trademark, PUBLIC IMPACT, Registration No. 2,805,013, which has been used continuously since 1996 and was registered in 2006. (*Id.* ¶¶ 5–8; Doc. 8–1.) In 2009, the United States Patent and Trademark Office declared the registration incontestable, pursuant to 15 U.S.C. § 1065. (Doc. 8 ¶ 10; Doc. 8–2.) Public Impact uses its trademark on its publications, websites, Facebook account, and Twitter page. (Doc. 8 ¶¶ 15–16, 26–27.)

BCG is a global management consulting firm incorporated in Massachusetts and maintains its corporate offices in Boston, Massachusetts. (Doc. 22 ¶ 3.) It is registered to do business in North Carolina and in every other State that requires such registration. (*Id.* ¶ 5; Doc. 1–1.) BCG has previously initiated, solicited, and engaged in education-related business within North Carolina. In 2010, BCG representatives attended a North Carolina State Board of Education planning session. (Doc. 31–3.) In 2012, BCG and Public Impact exchanged emails to discuss an education initiative. (Doc. 8 ¶ 32; Doc. 8–7.) In a 2010 publication, BCG listed its business accomplishments in North Carolina to include managing

North Carolina's proposal for federal education funding and reorganizing North Carolina's Department of Public Instruction. (Doc. 31–4 at 7; *see also* Doc. 31–2; Doc. 31–5; Doc. 31–6.) BCG also lists North Carolina on its website as a state to which it has provided "recent [educational] efforts." (Doc. 10–2 at 5.) From 2007 to 2014, BCG's North Carolina revenue comprised about 0.3% of its worldwide revenue, which amounts to tens of millions of dollars. (Doc. 22 ¶ 5; Doc. 30 at 6 (citing Doc. 31–7).) There is no indication, though, as to what percentage of that revenue derived from any education-related business activity by BCG in North Carolina. Finally, BCG helps host a consulting "Case Competition" every year at Duke University. (Doc. 31–1.)

**\*2** In June 2014, BCG created the "Centre for Public Impact: A BCG Foundation" ("CPI"). (Doc. 23 ¶ 3.) BCG owns the trademark, THE CENTRE FOR PUBLIC IMPACT: A BCG FOUNDATION, No. UK00003069013, in the United Kingdom, and owns several trademarks in other countries as well. (*Id.* ¶ 6.) BCG solely funds CPI, and CPI shares an office with BCG in London, where CPI is based. (*Id.* ¶ 3.) BCG publishes about CPI on its website. (*See, e.g.,* Doc. 10–7 at 4–6.)

CPI's mission is to "bring[ ] together world leaders to learn, exchange ideas and inspire each other to strengthen the public impact of their organizations."(Doc. 10–1 at 46.) CPI describes itself as "a global forum where leaders can learn" by "[s]haring insights from around the world."(*Id.*) Its officers include those who specialize in education. (*Id.* at 17, 19–20.) CPI, however, has no employees in the United States, and it is in the process of registering as a not-for-profit organization in Switzerland. (Doc. 23 ¶¶ 3–4.) CPI has conducted four events using its mark, all of which have occurred outside the United States, namely in London, England; New Delhi, India; and Jakarta, Indonesia. (Doc. 10–1 at 32–34, 46–47.)

CPI has a website, as well as Twitter and LinkedIn accounts. (Doc. 9–4; Doc. 9–5; Doc. 23 ¶ 7.) BCG owns CPI's website. (Doc. 9–2.) CPI has published at least one education-related article on its website and also tweets about education. (Doc. 9–5; Doc. 10–1 at 15–16.) CPI's website contains informational links titled "Who We Are" and "What We Do," which describe CPI and its mission. (Doc. 10–1 at 2.) The site also links to news articles and interviews relating to CPI —none of which is alleged to connect to North Carolina. (*Id.* at 15–16, 22–23, 32–39, 41–45.) The website also allows visitors to "Participate" but limits visitors' participation to signing up for news about CPI. (*Id.* at 40.)

On June 9, 2015, Public Impact filed its complaint against BCG, raising various claims regarding the use of Public Impact's registered trademark and claiming essentially that BCG is using CPI, and specifically the similarly-named "Centre for Public Impact" through CPI's website, to confuse and lure customers to BCG's consulting business that competes directly with Public Impact's. (Doc. 1) Contemporaneous with its complaint, Public Impact moved for temporary and preliminary injunctive relief and to seal certain documents filed in support. (Docs.6, 11.) On June 16, 2015, BCG moved to dismiss the complaint for lack of personal jurisdiction and, alternatively, to transfer venue to Boston. (Doc. 20) The parties filed responding briefs (Docs.24, 28), and the court held an adversarial hearing on Public Impact's motion for a temporary restraining order on June 17, 2015. Following the hearing, the parties filed supplemental briefing on BCG's motion to dismiss for lack of personal jurisdiction and, alternatively, to transfer venue. (Docs.30, 32.) On July 6, 2015, BCG responded to Public Impact's motion for preliminary injunction and motion to seal. (Docs.33, 36.)

**\*3** The motions are now ready for resolution.

## II. ANALYSIS

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Public Impact bears the burden of establishing personal jurisdiction by a preponderance of the evidence. *See Universal Leather, LLC v. Koro AR, S.A.,* 773 F.3d 553, 558 (4th Cir.2014); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 396 (4th Cir.2003); *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989)."When, however, as here, a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction." [2] *Carefirst,* 334 F.3d at 396; *see also Combs,* 886 F.2d at 676. "In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor."*Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir.1993); *accord Carefirst,* 334 F.3d at 396. If the existence of jurisdiction turns on disputed factual questions, the court may resolve the challenge on the basis of an evidentiary hearing or, if a prima facie demonstration of personal jurisdiction has been made, it can proceed "as if it has personal jurisdiction over th[e] matter, although factual determinations to the contrary

may be made at trial."*Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp.,* 812 F.Supp.2d 710, 717 (E.D.Va.2011) (citing 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.31 (3d ed.2011)); *see also Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp.,* 737 F.Supp. 925, 926 (W.D.Va.1990) ("When conflicting facts are contained in the affidavits, they are to be resolved in the plaintiff's favor."). Nevertheless, either at trial or at a pretrial evidentiary hearing, the plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.,* 416 F.3d 290, 294 n. 5 (4th Cir.2005).

"Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law."*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 710 (4th Cir.2002); *see also Daimler AG v. Bauman,* ––– U.S. ––––, ––––, 134 S.Ct. 746, 753, 187 L.Ed.2d 624 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). To determine whether personal jurisdiction is proper, the court engages in a two-part inquiry: first, North Carolina's long-arm statute must provide a statutory basis for the assertion of personal jurisdiction, and, second, the exercise of personal jurisdiction must comply with due process. *See Carefirst,* 334 F.3d at 396; *Pan–Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp.,* 825 F.Supp.2d 664, 677 (M.D.N.C.2011).

**\*4** In *Christian Science Board of Directors of the First Church of Christ, Scientist v. Nolan,* 259 F.3d 209 (4th Cir.2001), the Fourth Circuit held that N.C. Gen.Stat. § 1–75.4(1)(d) runs coextensively with the Due Process Clause, thereby collapsing the two-step process "into a single inquiry" as to whether the nonresident defendant has such "minimal contacts" with North Carolina that exercising jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." [3] 259 F.3d at 215 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *see also Cambridge Homes of N.C., LP v. Hyundai Const.,* Inc., 194 N.C.App. 407, 670 S.E.2d 290, 295 (N.C.Ct.App.2008) ( "When personal jurisdiction is alleged to exist pursuant to the long-arm statute, the question of statutory authority collapses into one inquiry—whether defendant has the minimum contacts necessary to meet the requirements of due process."(quoting *Filmar Racing, Inc. v. Stewart,* 141 N.C.App. 668, 541 S.E.2d 733, 736 (N.C.Ct.App.2001))). The Fourth Circuit recently confirmed its interpretation of North Carolina's long-

arm statute, holding that the issue of specific jurisdiction under *N.C. Gen.Stat. § 1–75.4(1)(d)* "merges" the two-prong test "into the single question" of whether a defendant has "sufficient contacts with North Carolina to satisfy constitutional due process."*Universal Leather, 773 F.3d at 558–59.* Thus, the single inquiry here is whether the exercise of personal jurisdiction over BCG "is consonant with the strictures of due process."*Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir.2012)* (per curiam).

**[1]** Under the Due Process Clause, personal jurisdiction over a defendant may be either general or specific. *See Goodyear Dunlop Tires Operations, S.A. v. Brown, —— U.S. ——, ——, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); Tire Eng'g & Distribution, 682 F.3d at 301.* Public Impact argues that this court may exercise both over BCG.

**1. General Jurisdiction**

**[2]** The Supreme Court has recently held that, aside from the "exceptional case," general personal jurisdiction over a corporation is usually only appropriate in the corporation's state of incorporation or principal place of business. *See Daimler, 134 S.Ct. at 761 n. 19.* There is no allegation that North Carolina is BCG's state of incorporation or its principal place of business.[4] Instead, Public Impact argues that general jurisdiction exists because BCG is registered to do business in North Carolina. (Doc. 28 at 3–11; Doc. 30 at 1–2.)

Public Impact's argument is foreclosed by binding Fourth Circuit precedent. In *Ratliff v. Cooper Labs., Inc., 444 F.2d 745 (4th Cir.1971),* the Fourth Circuit held that registration to do business in a forum does not confer personal jurisdiction over an out-of-state corporation. *Id. at 748.* It reasoned, "The principles of due process require a firmer foundation than mere compliance with state domestication statutes."*Id.* The Fourth Circuit recently reaffirmed *Ratliff's* holding in *Rosenruist–Gestao E Servicos LDA v. Virgin Enters. Ltd., 511 F.3d 437 (4th Cir.2007),* citing *Ratliff* for the proposition that "the designation of a statutory agent for service [is] insufficient to confer general jurisdiction over an out-of-state corporation."*Rosenruist–Gestao, 511 F.3d at 446* (citing *Ratliff, 444 F.2d at 748*).

**\*5** After *Ratliff,* lower courts in this circuit have routinely applied its holding. For example, in *Kuennen v. Stryker*

*Corp.,* No. 1:13CV00039, 2013 WL 5873277 (W.D.Va. Oct.30, 2013), the court held that a defendant's "business certificate and appointed agent ... are not independent support for general jurisdiction—'the principles of due process require a firmer foundation than mere compliance with state domestication statutes.'" Id. at \*4 (quoting *Ratliff, 444 F.2d at 748*); *see also Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc., 301 F.Supp.2d 545, 551 (E.D.Va.2004)* (citing and relying on *Ratliff* for the proposition that "complying with registration statutes and appointing an agent for service of process do not amount to consent to general personal jurisdiction"). Similarly, another decision from this district concluded, citing *Ratliff,*"A corporation's registration to do business in the state alone is not the deciding factor on which jurisdiction should be determined."*Estate of Thompson ex rel. Thompson v. Mission Essential Pers., LLC,* No. 1:11CV547, 2013 WL 6058308, at \*2 n. 1 (M.D.N.C. Nov.14, 2013), *report and recommendation adopted sub nom.Estate of Thompson v. Mission Essential Pers., LLC,* No. 1:11CV547, 2014 WL 4745947 (M.D.N.C. Sept.23, 2014). In sum, Fourth Circuit law forecloses Public Impact's argument that this court has general jurisdiction over BCG because it is registered to do business in this State.[5]

Public Impact's arguments to the contrary are unpersuasive. First, Public Impact argues that the Supreme Court's decision in *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982),* abrogated the Fourth Circuit's decision in *Ratliff.* (Doc. 28 at 9–11.) The Fourth Circuit has recognized no such abrogation and, as noted, continues to rely on *Ratliff,* after *Insurance Corp. of Ireland,* for the proposition that "the designation of a statutory agent for service [is] insufficient to confer general jurisdiction over an out-of-state corporation."*Rosenruist–Gestao, 511 F.3d at 446* (citing *Ratliff, 444 F.2d at 748*). Public Impact argues that *Insurance Corp. of Ireland* "endorsed jurisdiction by consent" (Doc. 28 at 10) but fails to explain how that endorsement—in a decision upholding the imposition of sanctions under *Rule 37 of the Federal Rules of Civil Procedure*—abrogated *Ratliff. See Ins. Corp. of Ireland, 456 U.S. at 702–09* (upholding district court's *Rule 37* sanctions, which had the effect of assuming personal jurisdiction over certain defendants).

Second, Public Impact argues that the Supreme Court's century-old decision in *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co., 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610 (1917),* allows for general jurisdiction over a defendant who follows a state's

registration statute. This argument is unconvincing. Most importantly, the Fourth Circuit's decision in *Ratliff* is binding on this court. Moreover, courts have recognized that Supreme Court decisions since *Pennsylvania Fire* "cast doubt on the continued viability" of that decision. *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.,* 83 F.Supp.2d 689, 692 (E.D.Va.2000). Most significant is the Supreme Court's landmark decision in *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), where the Court held that to extend personal jurisdiction over a defendant, the defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316 (internal quotation marks and citations omitted). As courts elsewhere have observed, "After *International Shoe,* the focus [of the personal jurisdiction inquiry] shifted from whether the defendant had been served within the state to whether the defendant's contacts with the state justified the state's assertion of jurisdiction." *Cognitronics Imaging Sys.,* 83 F.Supp.2d at 692; *see also Shaffer v. Heitner,* 433 U.S. 186, 212, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) ("[A]ll assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny."). More recently, in *Daimler,* the Supreme Court held that "continuous and systematic" business contacts with a State were insufficient for extending general jurisdiction unless those contacts were "so substantial and of such a nature as to render the corporation at home in [the forum] State." 134 S.Ct. at 761–62 & n. 19. At least some courts have interpreted *Daimler* to mean that a defendant's mere conformance with a State's business registration statute "cannot constitute consent to jurisdiction" and therefore is not sufficient for general jurisdiction. *AstraZeneca AB v. Mylan Pharm., Inc.,* 2014 WL 5778016, at *5 (D.Del.2014), *motion to certify appeal granted sub nom. Astrazeneca AB v. Aurobindo Pharma Ltd.,* No. CV 14–664–GMS, 2014 WL 7533913 (D.Del. Dec.17, 2014); *see also Cognitronics Imaging Sys.,* 83 F.Supp.2d at 692 (observing, before *Daimler,* that "[t]he Supreme Court has not yet addressed whether registration alone would be sufficient to confer general personal jurisdiction in light of its holding in *International Shoe*").

*6 Lastly, even taking Public Impact's argument at face value, it is unclear whether *Pennsylvania Fire* would apply in this case. In *Pennsylvania Fire,* the Supreme Court extended personal jurisdiction over an insurance company that was registered to do business in Missouri and, in further compliance with the law, had executed a power of attorney making service on an in-state representative "the equivalent

of personal service." 243 U.S. at 94–95. The Court observed, "[W]hen a power actually is conferred by a document, the party executing it takes the risk of the interpretation that may be put upon it by the courts." *Id.* at 96. Following *Pennsylvania Fire,* the Court limited that decision's reach, noting strong "reasons for a limited interpretation of ... compulsory assent" by way of a State statute. *Robert Mitchell Furniture Co. v. Selden Breck Const. Co.,* 257 U.S. 213, 215–16, 42 S.Ct. 84, 66 L.Ed. 201 (1921) ("[W]hen a foreign corporation appoints one as required by statute it takes the risk of the construction that will be put upon the statute and the scope of the agency by the State Court."). In *Robert Mitchell Furniture,* the Court held that only when a "state law either expressly [extends] or by local construction" is interpreted to extend jurisdiction over an out-of-State defendant regarding out-of-State business should a federal court construe the State statute as such. *Id.*

Here, Public Impact fails to demonstrate how North Carolina's registration statute "expressly" extends personal jurisdiction over registering businesses like BCG. Public Impact's suggested interpretation of North Carolina's registration statute is not immediately obvious from the face of the statute. *See* N.C. Gen.Stat. § 55–15–05(b) ("[A] foreign corporation with a valid certificate of authority has the same but no greater rights and has the same but no greater privileges as, and is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character."). It also cites no decision—State or federal—construing North Carolina's registration statute to extend personal jurisdiction over registered businesses.

For all these reasons, Public Impact has not demonstrated that the court has general jurisdiction over BCG.

## 2. Specific Jurisdiction

[3] [4] [5] [6] Specific jurisdiction requires "that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India,* 551 F.3d 285, 292 n. 15 (4th Cir.2009). A court may exercise specific jurisdiction when the cause of action "arises out of the defendant's contacts with the forum." *Saudi v. Northrop Grumman Corp.,* 427 F.3d 271, 276 (4th Cir.2005). The determination of whether jurisdiction is appropriate depends on the facts and circumstances of each case. *See Walden v. . Fiore,* ––– U.S. ––––, ––––, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014) (holding that the specific jurisdiction

inquiry necessitates a study of the interconnection between the defendant, the forum, and the litigation); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 485–86, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Extension of specific jurisdiction requires consideration of three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable."*Tire Eng'g & Distribution,* 682 F.3d at 301–02; *see also Universal Leather,* 773 F.3d at 559. Each prong must be satisfied. *See Consulting Eng'rs Corp. v. Geometric Ltd.,* 561 F.3d 273, 278–79 (4th Cir.2009).

**\*7** **[7]** **[8]** **[9]** The "purposeful availment" requirement ensures that "a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."*Burger King,* 471 U.S. at 475 (internal quotation marks omitted). Rather, a defendant's conduct and connection to the forum must be "such that [it] should reasonably anticipate being haled into court there."*Universal Leather,* 773 F.3d at 559 (quoting *Fed. Ins. Co. v. Lake Shore Inc.,* 886 F.2d 654, 658 (4th Cir.1989)). If a defendant has created a "substantial connection" to the forum, then it has purposefully availed itself of the privilege of conducting business there. *See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners,* 229 F.3d 448, 450 (4th Cir.2000); *ESAB Grp., Inc. v. Centricut, Inc.,* 126 F.3d 617, 625 (4th Cir.1997) (holding that "contacts related to the cause of action must create a 'substantial connection' with the forum state, although this connection need not be as extensive as is necessary for general jurisdiction" (citation omitted)). The connection to the forum "must arise out of contacts that the defendant *himself* creates with the forum State."*Walden,* 134 S.Ct. at 1122 (quoting *Burger King,* 471 U.S. at 475) (internal quotation marks omitted).

**[10]** This purposeful availment inquiry is flexible and includes an evaluation of (1) "whether the defendant maintains offices or agents in the forum state"; (2) "whether the defendant owns property in the forum state"; (3) "whether the defendant reached into the forum state to solicit or initiate business"; (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state"; (5) "whether the parties contractually agreed that the law of the forum state would govern disputes"; (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship"; (7) "the nature, quality and extent of the parties'

communications about the business being transacted"; and (8) "whether the performance of contractual duties was to occur within the forum."*Consulting Eng'rs,* 561 F.3d at 278 (citations omitted).

To demonstrate purposeful availment, Public Impact cites the following facts as favoring the exercise of personal jurisdiction over BCG. As to the first factor, BCG has maintained a registered agent in North Carolina since 2007 because it holds a certificate of authority to transact business in North Carolina requiring it to do so. (Doc. 1–1.) Regarding the third and fourth factors, BCG has previously initiated, solicited, and engaged in education-related business within North Carolina. In a 2010 publication, BCG listed its business accomplishments in North Carolina to include managing North Carolina's proposal for federal education funding and reorganizing North Carolina's Department of Public Instruction. (Doc. 31–4 at 7; Doc. 31–2; Doc. 31–5; Doc. 31–6.) BCG also lists North Carolina as a State to which it has provided "recent [educational] efforts." (Doc. 10–2 at 5.) From 2007 to 2014, BCG's North Carolina revenue comprised about 0.3% of its worldwide revenue, which amounts to tens of millions of dollars. (Doc. 22 ¶ 5; Doc. 30 at 7 (citing Doc. 31–7).) There is again no allegation, though, as to what percentage of that revenue, if any, came from education-related business activity by BCG in North Carolina. As to the sixth and seventh factors, there is no allegation that BCG has made in-person contact with Public Impact in the forum State regarding any business relationship. BCG and Public Impact did exchange emails in 2012 to discuss an education initiative. (Doc. 8 ¶ 32; Doc. 8–7.) And, in 2010, BCG representatives attended a North Carolina State Board of Education planning session, but there is no allegation that Public Impact representatives were in attendance or any business relationship between them resulted from BCG's presence. (Doc. 31–3.) Finally, BCG helps host a consulting "Case Competition" every year at Duke University. (Doc. 31–1.)

**\*8** **[11]** **[12]** Public Impact, however, fails to demonstrate how those contacts with North Carolina give rise to the claims in this case. *See Tire Eng'g & Distribution,* 682 F.3d at 301–03 (holding that a plaintiff's claims must "arise out of" a defendant's contacts with the forum state); *Saudi,* 427 F.3d at 276 (same)."Specific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state."*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 801 (7th Cir.2014), *as corrected* (May 12, 2014). Here, the complaint raises

claims concerning BCG's alleged use of Public Impact's trademark. (Doc. 1 ¶¶ 49–82.) None of those activities cited above by Public Impact, however, gives rise to its claims of trademark infringement. *See Walden,* 134 S.Ct. at 1121 ("For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State."(emphasis added)); *Goodyear Dunlop Tires Operations,* 131 S.Ct. at 2851 (referring to specific jurisdiction as "case-linked" jurisdiction); *Advanced Tactical,* 751 F.3d at 801 (holding, in a trademark action, that "[t]he only sales" in a forum by a defendant "that [are] relevant are those that were related to [a defendant's] allegedly unlawful activity"). None of BCG's past activity in North Carolina relates to its alleged trademark infringement. In fact, all of BCG's education-related business in North Carolina cited by Public Impact occurred well before Public Impact claims the trademark infringement began and CPI was created.

Public Impact attempts to tie BCG and the alleged trademark infringement to North Carolina through BCG's Internet activity. Notably, Public Impact does not allege that BCG has infringed its trademark in North Carolina other than through the Internet, namely through BCG's and CPI's websites, Twitter, and LinkedIn. (Doc. 1 ¶¶ 41–46.) Public Impact's allegations of trademark infringement, however, fail to sufficiently connect BCG to this State.

In *ALS Scan, Inc. v. Digital Service Consultants, Inc.,* 293 F.3d 707 (4th Cir.2002), the Fourth Circuit addressed "when electronic contacts with a State are sufficient" to exercise personal jurisdiction over a defendant. *Id.* at 713. The *ALS Scan* decision expressly "adopt[ed] and adapt[ed]" the model established in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997). The *Zippo* model created a "sliding scale" for examining personal jurisdiction in the context of electronic contacts with a forum state. *ALS Scan,* 293 F.3d at 713. Outlining this "sliding scale," the *Zippo* Court explained:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has

simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

**\*9** *Id.* at 713–14 (quoting *Zippo,* 952 F.Supp. at 1124). Applying *Zippo,* the Fourth Circuit held,

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*Id.* at 714. Elucidating this three-prong test, the Fourth Circuit further instructed, "Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received."*Id.*

Applying that test to a case involving claims of trademark infringement, the Fourth Circuit in *ALS Scan* found that the alleged Internet activity "was, at most, passive" and no personal jurisdiction existed because the defendant "did not select or knowingly transmit" the infringing material "specifically to" the forum State "with the intent of engaging in business or any other transaction" in the forum State. *Id.* at 714–15.

Two Fourth Circuit decisions have since applied *ALS Scan's* three-prong test. In *Young v. New Haven Advocate,* 315 F.3d 256 (4th Cir.2002), the Fourth Circuit found that a district court lacked specific jurisdiction over a Virginia libel suit

against two Connecticut newspapers. *Id.* at 261–64. The newspapers in question had posted an article about a Virginia prison on their websites. *Id.* at 259. Examining the website in question, the Fourth Circuit concluded that "neither newspaper's website contain[ed] advertisements aimed at a Virginia audience" and that the newspapers posted their articles with an intent to target a Connecticut—not Virginia—audience. *Id.* at 263–64. As a result, the Fourth Circuit held, "[T]he newspapers do not have sufficient Internet contacts with Virginia to permit the district court to exercise specific jurisdiction over them."*Id.* at 264.

The second case—*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390 (4th Cir.2003)—was a trademark infringement case. There, a Maryland corporation had sued an Illinois corporation in Maryland because of alleged trademark infringement on the Illinois corporation's website. *Id.* at 393–95. The Fourth Circuit examined whether the Illinois corporation, through its website, "expressly aimed its trademark-infringing conduct at the forum state" and determined that the corporation had not done so. *Id.* at 398, 401. In reaching its conclusion, the Fourth Circuit found persuasive that (1) the website was "semi-interactive," containing "features that make it possible for a user to exchange information with the host computer," with little "concrete evidence" of exchanges between Maryland residents and the Illinois corporation; and (2) the content on the website had "a strongly local character." *Id.* at 400–01.

**\*10** "These cases demonstrate that the Fourth Circuit has been notably reluctant to extend personal jurisdiction to out-of-state defendants based on little more than their presence on the Internet."*Rao v. Era Alaska Airlines,* 22 F.Supp.3d 529, 539 (D.Md.2014). Applying the reasoning of *ALS Scan* and its progeny to the facts in this case, the court finds that BCG's use of its and CPI's website, as well as Twitter and LinkedIn, fails to support the extension of specific jurisdiction over BCG.

First, CPI's website is, at best, "semi-interactive" and could more appropriately be described as "minimally interactive." *Christian Sci.,* 259 F.3d at 218 n. 11 (applying this description to a website that "invited visitors ... to e-mail questions and information requests" to the out-of-state defendant). Most of CPI's website does "little more than make information available to those who are interested in it."*ALS Scan,* 293 F.3d at 714 (quoting *Zippo,* 952 F.Supp. at 1124). For example, CPI's website contains informational links titled "Who We Are" and "What We Do," which describe CPI and its mission. (Doc. 10–1.) The site also links to news

articles and interviews relating to CPI—none of which is alleged to connect to North Carolina. (*Id.*) The website also allows visitors to "Participate," but presently limits visitors' participation to signing up for news about CPI. (*Id.*) Moreover, similar to the facts in *Carefirst,* there is no evidence of exchanges, of any nature, between North Carolina residents and BCG or CPI through the site. 334 F.3d at 400–01. CPI's remaining Internet presence is largely "passive," consisting of occasional informational articles posted to BCG's webpage, a Twitter page, and a LinkedIn account.[6] (*Id.;* Doc. 10–7.)

Second, nothing about CPI's website suggests that it is specifically directed at North Carolina. *See ALS Scan,* 293 F.3d at 714–15. Although not "decidedly local" as in *Young,* 315 F.3d at 263, BCG's CPI website is broadly directed toward a "global" audience. According to the website, CPI "is a global forum where leaders can learn" by "[s]haring insights from around the world."(Doc. 10–1 at 46.) The website further describes CPI as "bring[ing] together world leaders" through "global forums." (*Id.*) As Public Impact admits, BCG's only alleged trademark infringement beyond its electronic presence has occurred outside the United States, namely in London, England; New Delhi, India; and Jakarta, Indonesia. (*Id.*) This content and BCG's conduct abroad provide nothing to suggest the BCG is using CPI's website to specifically target North Carolina.[7]

Third, BCG's online use of CPI manifests no intent to target North Carolina. In its brief, Public Impact argues that BCG launched CPI as "a marketing tool for BCG's education-related consulting work in North Carolina."(Doc. 30 at 7.) In support of its assertion, Public Impact notes that BCG's "thought leadership" marketing strategy involves "distributing its ideas freely" and cites BCG's past education-related activity in North Carolina. (*Id.* at 4–7; Doc. 31–8.) Even inferring that BCG uses CPI as part of its marketing strategy despite CPI's status as a soon-to-be non-profit organization, Public Impact fails to show that BCG manifested an intent to use CPI via the Internet to engage in business or other interactions within North Carolina. Also, while it may perhaps be reasonable to infer that BCG intends to continue education-related business in North Carolina (despite little evidence of education-related work within the State in several years), the presented evidence permits no reasonable inference that BCG intends to somehow use CPI to specifically target North Carolina. There is no allegation that BCG has used Public Impact's trademark in North Carolina (other than via the Internet), nor does it appear

**Public Impact, LLC v. Boston Consulting Group, Inc., --- F.Supp.3d --- (2015)**
2015 WL 4622028

that BCG has specifically used the trademark to establish any contact with a North Carolina resident or the State of North Carolina itself. *See ALS Scan,* 293 F.3d at 714–15 (finding no personal jurisdiction where plaintiff failed to show defendant's knowing transmission of infringing material specifically to the forum State "with the intent of engaging in business or any other transaction in" the forum State); 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:38.40 (4th ed. 2004) ("A claim of trademark infringement takes place where the allegedly infringing sales occur.").

**\*11** **[13]** Under Public Impact's theory, specific jurisdiction would exist in any forum with Internet access in which BCG previously conducted education-related business because that past activity has the potential to give rise to speculative, future infringing use of its trademark within that forum. However, "[a] plaintiff cannot establish personal jurisdiction by relying solely on the basis of [its] own conclusory, speculative assertions."*Luellen v. Gulick,* No. 1:10CV203, 2012 WL 1029577, at \*5 (N.D.W.Va. Mar.26, 2012); *see also Carefirst,* 334 F.3d at 402 ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."). Public Impact's speculative assertion here is unpersuasive.

In conclusion, the court finds that it lacks specific, as well as general, jurisdiction over BCG and will grant BCG's motion to dismiss on that basis.

**B. Motion to Seal**

**[14]** Public Impact has also moved to seal both its unredacted brief (Doc. 14) filed in support of its underlying motion for preliminary injunction and temporary restraining order (Doc. 6) and the unredacted declaration of Bryan Hassel (Doc. 15). (Doc. 11.) BCG does not oppose the motion. (Doc. 36.)

**[15]** **[16]** **[17]** The public enjoys a right to access documents filed in connection with a dispositive motion in a civil case. *ATI Indus. Automation, Inc. v. Applied Robotics, Inc.,* 801 F.Supp.2d 419, 427 (M.D.N.C.2011) (citing *Rushford v. New Yorker Magazine,* Inc.,846 F.2d 249, 252–53 (4th Cir.1988)). However, a district court has discretion to seal documents when the "public's right of access is outweighed by competing interests."*In re Knight Publ'g Co.,* 743 F.2d 231, 235 (4th Cir.1984). Before sealing documents, a district court must "(1) provide public notice of

the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives."*Ashcraft v. Conoco, Inc.,* 218 F.3d 288, 302 (4th Cir.2000) (citations omitted). The burden falls on the party seeking to keep the information sealed. *Va. Dep't of State Police v. Wash. Post,* 386 F.3d 567, 575 (4th Cir.2004).

Public Impact has met its burden here by redacting only a small portion of material concerning two proprietary financial figures. Public notice of Public Impact's request to seal was provided on June 09, 2015, when Public Impact filed its "First MOTION to Seal," seeking to file its unredacted brief and declaration under seal. (Doc. 11.) The motion has now been pending for over a month without any objection having been raised. The court has also considered less drastic alternatives to sealing the unredacted brief and declaration. Public Impact has also filed redacted versions of both documents. (Docs.7– 8.) After a careful comparison of the redacted and unredacted documents, the court sees no less drastic alternative to the redaction of the two financial figures. (Docs.7–8, 14– 15.) Finally, the limited financial information redacted in Public Impact's brief and declaration is proprietary and its public release would negatively affect Public Impact's business. *See Bayer Cropscience Inc. v. Syngenta Crop Prot., LLC,* 979 F.Supp.2d 653, 656–57 (M.D.N.C.2013) (holding that "certain marketing [and] sales" information should be sealed as it was "not ordinarily public" and would cause "harm[ ] by public disclosure"); *Harrell v. Duke Univ. Health Sys., Inc.,* No. CIV.A. 7:07–813, 2007 WL 4460429, at \*1 (D.S.C. Dec.18, 2007) (approving the sealing of an entire exhibit because of the potential disclosure of proprietary information). The court, therefore, will grant Public Impact's motion to seal its unredacted brief and declaration (Docs.14– 15).

**III. CONCLUSION**

**\*12** For the reasons stated,

IT IS THEREFORE ORDERED that Public Impact's motion to seal (Doc. 11) is GRANTED.

IT IS FURTHER ORDERED that BCG's motion to dismiss for lack of personal jurisdiction (Doc. 20) is GRANTED. As a result, Public Impact's motion for temporary restraining order and preliminary injunction (Doc. 6) is DENIED WITHOUT

PREJUDICE AS MOOT, and this action is DISMISSED WITHOUT PREJUDICE.

1    The court may consider supporting affidavits when determining whether a plaintiff has made a prima facie showing of personal jurisdiction. *Universal Leather, LLC v. Koro AR, S.A.,* 773 F.3d 553, 558 (4th Cir.2014) ("When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction.").

2    By the time of the June 17, 2015 hearing on Public Impact's motion for temporary restraining order, the parties lacked the opportunity to have fully briefed the issue of personal jurisdiction or gather evidence.

3    BCG makes no argument that Public Impact fails to cite a statutory provision supporting personal jurisdiction. *See Danner v. Int'l Freight Sys. of WA, L.L.C., No. CIVA RDB 09 3139, 2010 WL 2483474, at *3 (D.Md. June 15, 2010)* (analyzing personal jurisdiction despite plaintiffs' failure to cite a long-arm statutory provision).

4    Nor does Public Impact argue that BCG's contacts with North Carolina outside of BCG's registration are "so substantial and of such a nature as to render the corporation at home in [North Carolina]." *Daimler,* 134 S.Ct. at 761 n. 19.

5    Outside of this circuit, courts are split on this issue. *Compare Senju Pharm. Co. v. Metrics, Inc.,* No. CIV.A. 14 3962, 2015 WL 1472123, at *5 8 & n. 7 (D.N.J. Mar.31, 2015), with *AstraZeneca AB v. Mylan Pharm., Inc.,* 2014 WL 5778016, at *4 5 (D.Del.2014), *motion to certify appeal granted sub nom. Astrazeneca AB v. Aurobindo Pharma Ltd.,* No. CV 14 664, 2014 WL 7533913 (D.Del. Dec. 17, 2014).

6    Public Impact makes no allegation that BCG, through CPI, has had any interaction with North Carolina residents through Twitter or LinkedIn.

7    Citing *Cable News Network L.P., L.L.L.P. v. CNNews.com,* 177 F.Supp.2d 506 (E.D.Va.2001), *aff'd in part, vacated in part sub nom. Cable News Network, LP, LLLP v. CNNews.com,* 56 F. App'x 599 (4th Cir.2003), Public Impact argues, "American courts routinely adjudicate Lanham Act cases involving extraterritorial uses of federally registered trademarks that cause a likelihood of confusion in the United States."(Doc. 30 at 12.) In that case, however, the district court exercised in rem jurisdiction over the allegedly infringing domain name because a Virginia corporation served as the domain name's registrar and registry. *Id.* at 512 14. The court did not find that it had personal jurisdiction over the domain name's owner.

**All Citations**

--- F.Supp.3d ----, 2015 WL 4622028

---

**End of Document**      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Attachment D

2015 WL 5227955
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas,
Houston Division.

Omar HAZIM, Plaintiff,
v.
SCHIEL & DENVER PUBLISHING
LTD., et al., Defendants.

Civil Action No. H–12–
1286. | Signed Sept. 8, 2015.

**Attorneys and Law Firms**

Delphine M. James, Attorney at Law, Houston, TX, for
Plaintiff.

Schiel & Denver Publishing Ltd., pro se.

**MEMORANDUM OPINION AND ORDER**

LEE H. ROSENTHAL, District Judge.

**\*1** The plaintiff, Omar Hazim, has moved for
reconsideration of this court's order granting defendant Schiel
& Denver Publishing Ltd.'s ("S & D Ltd.") motion to dismiss
for lack of personal jurisdiction and denying Hazim's motion
for summary judgment. (Docket Entry No. 31). In addition to
his motion for reconsideration, Hazim also has moved to file
an amended complaint, with the proposed complaint he seeks
leave to file. (Docket Entry No. 32 at p. 6–7; Docket Entry No.
34). Based on a careful review of the motions, Hazim's briefs
and submissions, the pleadings, the record, and the applicable
law, the court denies the motion for reconsideration and the
motion to amend the complaint. Because this Memorandum
Opinion and Order resolves all the issues in this civil action,
an order of dismissal is entered by separate order. The reasons
are explained below.

**I. Background**
The background is set out in detail in this court's July 28,
2015, Memorandum and Order, (Docket Entry No. 31), and is
only summarized here. Hazim, a Kansas resident, contracted
with S & D Ltd., a publication-on-demand company based
in the United Kingdom. Hazim and S & D Ltd. entered

into an author agreement on August 13, 2010, in which
S & D Ltd. agreed to provide "production, printing [,]
and distribution" services for Hazim's book, "Islam in the
Heartland of America."(Docket Entry No. 25, Ex. C at p. 1).
In November 2010, Hazim ordered 250 copies of "Islam in
the Heartland of America" from S & D Ltd. (Docket Entry
No. 1 at p. 4). Hazim alleges that he received only one of
the copies. (*Id.*). In December 2010, S & D Ltd. invoked the
author agreement's termination clause because, in its view,
Hazim's book contained "extreme Islamic terrorist and hate
material."(Docket Entry No. 3 at 7). Hazim alleges that S & D
Ltd. continued to "print, publish[,] and sell" his book without
his authorization and without providing an accounting of sales
and royalties. (Docket Entry No. 1 at 5).

On April 23, 2012, Hazim sued S & D Ltd. and two
affiliate entities, Schiel & Denver Book Publishers ("S &
D Book Publishers") and Schiel & Denver Book Group
("S & D Book Group"). The complaint asserted claims
for breach of contract, copyright infringement, violation of
the Trademark Act, unfair competition, violations of the
Texas Deceptive Trade Practices Act, unjust enrichment, and
tortious interference with a contract. (Docket Entry No. 1). S
& D Ltd. answered seven days later, asserting that this court
lacks personal jurisdiction over S & D Ltd. and that S & D
Book Publishers and S & D Book Group are not legal entities
capable of being sued. (Docket Entry No. 3). In July 2013,
Hazim moved for entry of default as to all defendants. (Docket
Entry No. 17). This court granted the motion as to S & D Book
Group but denied the motion as to S & D Ltd. and S & D Book
Publishers because Hazim had failed to show proper service
of process on those defendants. (Docket Entry No. 19).

**\*2** In April 2014, Hazim moved for default judgment against
all defendants. (Docket Entry No. 23). The court denied the
motion because Hazim had failed to address the arguments
raised in S & D Ltd.'s answer, including that a Texas court
lacked personal jurisdiction over S & D Ltd. and that S & D
Book Publishers and S & D Book Group are not legal entities
that could be sued. (Docket Entry No. 24). Hazim filed a
response addressing the personal-jurisdiction argument raised
in S & D Ltd.'s answer but not responding to the arguments
about the legal status of S & D Ltd.'s affiliate entities. (Docket
Entry No. 25).

In February 2015, Hazim moved for summary judgment
and entry of final judgment against S & D Ltd. (Docket
Entry Nos. 28, 30). In its July 28, 2015, Memorandum and
Order, (Docket Entry No. 31), this court denied that motion,

granted S & D Ltd.'s motion to dismiss for lack of personal jurisdiction, and ordered Hazim to show cause why his claims against S & D Book Publishers should not be dismissed for failure to prosecute and failure to comply with the court's August 2014 order to address the legal status of S & D Ltd.'s affiliate entities. Hazim moves for reconsideration.

## II. The Motion for Reconsideration

### A. The Legal Standard for a Motion for Reconsideration
The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See St. Paul Mercury Ins. Co. v. Fair Grounds Corp.,* 123 F.3d 336, 339 (5th Cir.1997) (stating that "the Federal Rules of Civil Procedure do not recognize a general motion for reconsideration"). A court retains the power to revise an interlocutory order before entering judgment adjudicating the parties' claims, rights, and liabilities. FED. R. CIV. P. 54(b). A motion that asks the court to change an order or judgment is generally considered a motion to alter or amend under Rule 59(e). *T– M Vacuum Products, Inc. v. TAISC, Inc.,* No. 07–cv–4108, 2008 WL 2785636, at *2 (S.D.Tex. July 16, 2008). A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.,* 367 F.3d 473, 478– 79 (5th Cir.2004) (citing *In re Transtexas Gas Corp.,* 303 F.3d 571, 581 (5th Cir.2002)). A Rule 59(e) motion " 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.' " *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 863–64 (5th Cir.2003) (quoting *Simon v. United States,* 891 F.2d 1154, 1159 (5th Cir.1990)). Changing an order or judgment under Rule 59(e) is an "extraordinary remedy" that courts should use sparingly. *Templet,* 367 F.3d at 479; *see also* 11 CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1, at 124 (2d ed.1995). The Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *S. Constructors Group, Inc. v. Dynalectric Co. .,* 2 F.3d 606, 611 (5th Cir.1993). A motion to reconsider may not be used to relitigate old matters or to raise arguments or present evidence that could have been raised before the entry of the judgment or order. 11 WRIGHT, MILLER, AND KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1 at 127–28 (footnotes omitted).

### B. Analysis

**\*3** Hazim moves for reconsideration based on newly discovered evidence and clear legal error. These arguments are addressed in turn. [1]

[1]    Hazim also asserts, without explanation or support, that the judgment against him will result in a manifest injustice. (Docket Entry No. 35 at p. 1). This argument lacks the legal and factual support necessary for the relief Hazim seeks.

### 1. The Argument Based on Newly Discovered Evidence
Hazim seeks to introduce new evidence supporting his argument that this court has personal jurisdiction over S & D Ltd. Hazim alleges that S & D Ltd. "has a physical location in the state of Texas that operated as a business in the State of Texas" and that S & D Ltd. shipped products from-and received "communications, invoices, [and] payments" at-its Texas address. (Docket Entry No. 32, at p. 9). Hazim has filed with his motion for reconsideration an invoice he received from S & D Ltd. when he purchased copies of his book. He has also resubmitted a shipment order that shows he received only one copy of his book. The invoice and the shipment order provide a return address for S & D in Houston, Texas. (Docket Entry No. 32, Ex. A). Hazim has filed an affidavit stating that his various interactions with S & D Ltd. led him to believe the company did business in Texas. (Docket Entry No. 32, Ex. F). Hazim states that these documents show that S & D Ltd. stored copies of his book in its Texas office and shipped copies from there. (Docket Entry No. 32, at p. 4). He also asserts that S & D Ltd. has an office in Humble, Texas, with at least one employee. Hazim submits a United States Postal Service Form 1583, which authorizes the delivery of S & D's mail to an agent at an address in Humble, Texas. (Docket Entry No. 32, Exs. G, H). Hazim argues that this document reveals "by implication" that S & D Ltd. employs "an agent ... [who] warehouses [its] products in the state of Texas" and that S & D Ltd. maintains "an office in Humble, Texas, with at least one employee" with whom Hazim has "interfaced." (Docket Entry No. 32, at p. 4–5; Docket Entry No. 32, Ex. F). Hazim argues that this new evidence shows that S & D Ltd. is subject to both general and specific personal jurisdiction in Texas.

"A motion to reconsider based on an alleged discovery of new evidence should be granted only if (1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative

or impeaching."*Johnson v. Diversicare Afton Oaks, LLC,* 597 F.3d 673, 677 (5th Cir.2010) (quotation marks omitted). Hazim has not shown why the new evidence he has filed with his motion for reconsideration "could not have been discovered earlier by proper diligence."*See id.*

The "newly discovered" evidence, moreover, does not support reconsideration. There is no general jurisdiction over S & D Ltd. in Texas. The new evidence does not show that S & D Ltd. has its "principal place of business" or is "essentially at home" in Texas. *Daimler AG v. Bauman,* —U.S. —, — — – —, 134 S.Ct. 746, 760–61, 187 L.Ed.2d 624 (2014). Nor is there specific jurisdiction over S & D Ltd. in Texas. The new evidence does not show suit-related contact between S & D Ltd. and Texas. "[T]he underlying cause of action must arise out of the defendant's contacts with the forum state."*Luv N' Care, Ltd. v. Insta–Mix, Inc.,* 438 F.3d 465, 472 (5th Cir.2006) (quotation marks omitted). The actions giving rise to Hazim's claims are alleged to have occurred in Kansas and the United Kingdom, not in Texas. The fact that one copy, rather than 250 copies, of the books were sent to Hazim in Kansas from S & D Ltd. in the United Kingdom with a layover in Texas does not show that S & D Ltd. performed or breached the contract in Texas or that it purposefully directed its actions toward Texas. As the Texas Supreme Court has explained:

> **\*4** [T]he manufacturer must have intended to serve the Texas market. While use of a Texas distributor may satisfy this requirement, there may be situations in which it does not. A Texas distributorship may increase the manufacturer's bottom line because it is more efficient or has greater access to economies of scale, and not because it is intended to serve Texas consumers.

*Spir Star AG v. Kimich,* 310 S.W.3d 868, 875 (Tex.2010) (citations omitted). Even considering Hazim's newly submitted evidence does not lead to the result that S & D Ltd. engaged in Texas-based conduct giving rise to the claims he asserts, as necessary to subject it to personal jurisdiction in this state. *See Pervasive Software, Inc. v. Lexware GmbH & Co. KG,* 688 F.3d 214, 222 (5th Cir.2012) (no specific personal jurisdiction when "all of [the defendant]'s acts giving rise to [the plaintiff]'s claims ... took place in Germany, not in Texas"); *Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 217 (5th Cir.2000) (no specific personal jurisdiction when the plaintiffs "have not asserted that the

alleged misdeeds [by the nonresident defendants] occurred in Texas, or that the [contract] was negotiated or executed in Texas" and when neither plaintiff was a Texas resident).

**2. The Argument Based on Clear Legal Error**

Hazim reasserts the arguments the court considered and rejected in its July 28, 2015 Memorandum and Order. A motion to reconsider may not be used to relitigate old matters. 11 WRIGHT, MILLER, AND KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1 at 127–28.

Hazim raises one argument the court has not yet addressed: that he "served Schiel and Denver in the state of Texas" and that this is enough to show personal jurisdiction over S & D Ltd. and its affiliate entities. (Docket Entry No. 32 at p. 4, 10– 11).

Hazim effected service through the Texas Secretary of State. (Docket Entry No. 20, Ex. 2). The Secretary of State becomes the agent for service of process of a corporation if it fails to maintain a registered agent in Texas, or if its registered agent cannot be found with reasonable diligence at the registered office. TEX. BUS. ORGS.CODE § 5.251. The Fifth Circuit has held that "the mere act" of registering a corporate agent in the forum state who is then served with process shows neither general jurisdiction in Texas nor "consent to be hauled into Texas courts on any dispute with any party anywhere concerning any matter."*Wenche Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179, 183 (5th Cir.1992) (quotation marks omitted). Hazim has not shown that S & D Ltd. has a registered corporate agent in Texas. And even if he had made that showing, effecting service in the forum State on a registered corporate agent is not enough to show personal jurisdiction over the nonresident corporation. *Id.* Hazim's argument does not support reconsideration.

**III. The Motion to Amend the Complaint**

**A. The Legal Standard for a Motion to Amend**

**\*5** Under Federal Rule of Civil Procedure 15(a), a district court "should freely give leave [to amend] when justice so requires."FED. R. CIV. P. 15(a)(2)."[T]he language of this rule evinces a bias in favor of granting leave to amend."*Jones v. Robinson Prop. Grp., L.P.,* 427 F.3d 987, 994 (5th Cir.2005) (internal quotation marks omitted). Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]"*Id.*(internal quotation marks

omitted). Under Rule 15(a), "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *United States ex rel. Steury v. Cardinal Health, Inc.,* 625 F.3d 262, 270 (5th Cir.2010).

**B. Analysis**

Hazim also has moved to amend his complaint to incorporate additional allegations based on the new evidence filed with his motion for reconsideration, (Docket Entry No. 32, at p. 6–7), and Hazim has filed an amended complaint, (Docket Entry No. 34). Hazim's amended complaint alleges that S & D Ltd. "operated a physical office in Houston, Texas"; that S & D Ltd.'s "employees resided in Texas"; and that "shipments were sent [by S & D Ltd.] from the State of Texas."(Docket Entry No. 34 at p. 2).

"In cases where a party seeks to amend her complaint after entry of judgment, [the Fifth Circuit has] consistently upheld the denial of leave to amend where the party seeking to amend has not clearly established that he could not reasonably have raised the new matter prior to the trial court's merits ruling." *Vielma v. Eureka Co.,* 218 F.3d 458, 468 (5th Cir.2000) (quotation marks omitted). Hazim filed his original complaint more than three years ago. (Docket Entry No. 1). This court directed Hazim to address the issue of personal jurisdiction in an August 2014 order, which he did by filing a written response and supplemental exhibits. (Docket Entry Nos. 25, 26). Hazim has not "clearly established that he could not reasonably have raised" these new allegations prior to this court's ruling on his motion for summary judgment and S & D Ltd.'s motion to dismiss. *See id.*

**IV. Hazim's Response to the Court's Show–Cause Order**

Hazim has not shown cause not to dismiss his claims against S & D Book Publishers. In his motion for reconsideration, Hazim concedes that both S & D Book Publishers and S & D Book Group are not legal entities, and the real party in interest is S & D Ltd. (Docket Entry No. 32, at 3).

**V. Conclusion**

For these reasons, and for the reasons stated in the court's earlier rulings, (Docket Entry Nos. 24, 31), Hazim's motion for reconsideration, (Docket Entry No. 35), and Hazim's motion to amend the complaint, (Docket Entry No. 32), are denied. The claims against S & D Ltd., S & D Book Group, and S & D Book Publishers are dismissed.

**All Citations**

Slip Copy, 2015 WL 5227955

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.